# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Martin*, 2011 IL 109102

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. AARON L. MARTIN, Appellee. |
| Docket No. | 109102 |
| Filed | April 21, 2011 |
| Rehearing denied | September 26, 2011 |
| Held <br><br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Because it is not possible to measure the extent to which the presence of methamphetamine in the human body causes impairment, "drug driving," or misdemeanor driving under the influence of a drug, is a strict liability offense which can be proved by the presence of only trace amounts of the drug in the urine; and where a motorist who had trace amounts of methamphetamine in his urine caused a fatal accident, he could be convicted of the felony of aggravated DUI without proof of any particular level of impairment, since the urine finding simply enhanced the misdemeanor to a felony. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Stuart P. Borden, Judge, presiding. |
| Judgment | Appellate court judgment reversed; circuit court judgment affirmed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Kevin W. Lyons, State's Attorney, of Peoria (Michael A. Scodro, Solicitor General, and Michael M. Glick and Michael R. Blankenheim, Assistant Attorneys General, of Chicago, and Patrick Delfino, Terry A. Mertel and Victoria E. Jozef, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People. |
| | |
| | Michael J. Pelletier, State Appellate Defender, Robert Agostinelli and Peter A. Carusona, Deputy Defenders, Verlin R. Meinz, Assistant Deputy Defender, and Kerry J. Bryson, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee. |
| | |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion. |

## OPINION

¶ 1 This case involves two related issues. In its appeal, the State argues that the appellate court erred in holding the State failed to prove defendant Aaron Martin guilty of aggravated driving under the influence (DUI) (see 625 ILCS 5/11-501(d)(1)(F) (West 2008)) because it presented no evidence of a causal link between a trace amount of methamphetamine found in his urine and a car accident in which two persons died. In his cross-appeal, the defendant argues that the appellate court erred in holding the State proved him guilty of misdemeanor DUI. See 625 ILCS 5/11-501(a)(6) (West 2008). We now reverse the appellate court's decision and reinstate the defendant's original conviction and sentence.

¶ 2 BACKGROUND

¶ 3 On December 25, 2004, at 10 p.m., the defendant left a bar in Peoria. As he was driving home on a two-lane state highway, his car crossed the center line at a curve and struck an oncoming car. The driver and the passenger of that car were killed in the accident. The defendant was injured, and he was taken to a nearby hospital where he was given a narcotic painkiller, but not methamphetamine. At the hospital he received two traffic citations, one for improper lane usage and one for driving on the wrong side of the road. After he was placed under arrest by a Peoria County sheriff's deputy, he consented to requests for two blood and urine samples. Subsequent tests revealed that the defendant's blood contained no alcohol or controlled substances, but his urine contained methamphetamine and amphetamine. The defendant was then indicted on one count of aggravated DUI.

¶ 4 At trial in the circuit court of Peoria County, the State presented testimony from two

eyewitnesses to the accident. Both stated that they saw the defendant's truck traveling northbound miss the curve, veer into southbound traffic, and collide head-on with another car. Those accounts were consistent with the findings of an accident reconstructionist, who testified that the impact occurred in the lane occupied by the other car. A forensic pathologist testified that the victims' fatal injuries were consistent with a high-impact motor vehicle accident.

¶ 5    The defendant's friend, Tiffany Graham, also testified for the State. Graham stated that after the defendant was released from the hospital, she organized a benefit to help him pay his medical bills. Graham received an anonymous telephone call shortly before the benefit, asking her how she could raise money for "somebody who killed two people while on crystal meth." Later, Graham confronted the defendant with this information. According to Graham, she asked him why she had received the telephone call, and he responded that his "drug test came back positive." He told her, "I have done crystal meth before, but I was not on crystal meth that night." The defendant did not indicate to Graham when he had last used methamphetamine.

¶ 6    Cathy Anderson, a forensic scientist for the Illinois State Police, testified that she tested the defendant's blood samples for alcohol and drugs. She found none. She also tested the defendant's urine samples for drugs. A preliminary screening test indicated that a small amount of "some sort of drug of the amphetamine class" could be present in the samples. Anderson then performed a gas chromatography mass spectrometry test, looking for a wide range of drugs. She found nothing significant. She then performed a more specific spectrometry test, looking for drugs in the amphetamine class. That test revealed the presence of methamphetamine, though it did not indicate how much. According to Anderson, controlled substances enter the bloodstream first and are eventually eliminated through the urinary tract. She was not surprised to find methamphetamine in the urine samples, but not the blood samples. She also testified that none of the other substances in the defendant's urine would have triggered a false indication for methamphetamine.

¶ 7    The defendant presented testimony from a single witness: Dr. Alfred Staubus, a forensic toxicologist. Dr. Staubus stated that he had reviewed Anderson's report, and he discussed her findings. According to Dr. Staubus, the amount of methamphetamine in the defendant's urine was so small that the test result should have been negative. He asserted, "It's my opinion to a reasonable degree of scientific certainty that the urine sample of the defendant, Mr. Martin[,] does not contain detectable amounts, realistic amounts of amphetamines.

¶ 8    The jury found the defendant guilty. The court entered judgment on that verdict and sentenced him to six years' imprisonment. The defendant appealed.

¶ 9    A divided appellate court panel reversed the defendant's conviction for aggravated DUI and remanded for resentencing on misdemeanor DUI. No. 3-07-0263 (unpublished order under Supreme Court Rule 23). Justice O'Brien, in the lead opinion, concluded that the State had proved beyond a reasonable doubt that there was methamphetamine in the defendant's urine and that his use of this drug was unlawful. Thus, he violated section 11-501(a)(6). Justice O'Brien then turned to the issue of whether this violation was the proximate cause of the deaths here. According to Justice O'Brien, section 11-501(d)(1)(F) "does not state ***

that the State need only prove that the violator's driving caused the deaths." If the legislature would have intended such an interpretation, she asserted, it would have phrased that section differently. The violation, not the defendant's driving, must be a proximate cause of the deaths. That is, "the State must draw some relationship between the presence of methamphetamine in Martin's urine while he was operating a motor vehicle *** and the deaths that resulted from the motor vehicle accident." Justice O'Brien concluded that the State did not prove a causal link between the trace amount of methamphetamine and the accident and, consequently, did not prove the defendant guilty of aggravated DUI.

¶ 10    Justice McDade concurred in part and dissented in part. She agreed with Justice O'Brien that the State failed to prove the defendant guilty of aggravated DUI. She disagreed, however, that the State had proved him guilty of misdemeanor DUI because the evidence did not show that his use of methamphetamine was unlawful. Justice Wright also concurred in part and dissented in part. She agreed with Justice O'Brien that the State had proved the defendant's use was unlawful. She disagreed that the State failed to prove the defendant guilty of aggravated DUI. According to Justice Wright, impairment is not a required element for the underlying misdemeanor DUI, so it is not an element of aggravated DUI.

¶ 11    We allowed the State's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 12                                                    ANALYSIS

¶ 13    Section 11-501 provides:

"(a) A person shall not drive or be in actual physical control of any vehicle within this State while:

(1) the alcohol concentration in the person's blood or breath is 0.08 or more based on the definition of blood and breath units in Section 11-501.2 [625 ILCS 5/11-501.2];

(2) under the influence of alcohol;

(3) under the influence of any intoxicating compound or combination of intoxicating compounds to a degree that renders the person incapable of driving safely;

(4) under the influence of any other drug or combination of drugs to a degree that renders the person incapable of safely driving;

(5) under the combined influence of alcohol, other drug or drugs, or intoxicating compound or compounds to a degree that renders the person incapable of safely driving; or

(6) there is any amount of a drug, substance, or compound in the person's breath, blood, or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act [720 ILCS 550/1 *et seq.*], a controlled substance listed in the Illinois Controlled Substances Act [720 ILCS 570/100 *et seq.*], an intoxicating compound listed in the Use of Intoxicating Compounds Act [720 ILCS 690/0.01 *et seq.*], or methamphetamine as listed in

-4-

the Methamphetamine Control and Community Protection Act [720 ILCS 646/1 *et seq.*].

\* \* \*

(d) Aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof.

(1) Every person convicted of committing a violation of this Section shall be guilty of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof if:

\* \* \*

(F) the person, in committing a violation of subsection (a), was involved in a motor vehicle, snowmobile, all-terrain vehicle, or watercraft accident that resulted in the death of another person, when the violation of subsection (a) was a proximate cause of the death." 625 ILCS 5/11-501 (West 2008).

¶ 14    Section 11-501 sets forth the elements of a misdemeanor offense, then provides sentencing enhancements based upon the presence of other factors. *People v. Van Schoyck*, 232 Ill. 2d 330, 337 (2009). "[A]ggravated DUI occurs when an individual commits some form of misdemeanor DUI, in violation of paragraph (a), and other circumstances are present. The legislature added aggravating factors that change[ ] the misdemeanor DUI to a Class 4 felony." *People v. Quigley*, 183 Ill. 2d 1, 10 (1998). In order to prove the defendant committed aggravated DUI, the State was required to prove initially that he committed misdemeanor DUI. In his request for cross-relief, the defendant argues that the State failed to do so. Specifically, he contends that the State failed to prove that the trace amount of methamphetamine in his urine was due to his unlawful use or consumption of a controlled substance.

¶ 15    In reviewing the sufficiency of the evidence in a criminal case, our inquiry is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Davison*, 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We view the evidence in the light most favorable to the prosecution, and allow all reasonable inferences from that evidence to be drawn in favor of the prosecution. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

¶ 16    In this case, the State was required to prove that the defendant operated a motor vehicle while there was any amount of a drug, substance, or compound in his breath, blood, or urine resulting from the unlawful use or consumption of methamphetamine. Because possession of a controlled substance is unlawful *per se* (see 720 ILCS 570/402 (West 2008)), the State must establish simply that the defendant used or consumed a controlled substance before driving. See *People v. Rodriguez*, 398 Ill. App. 3d 436, 442 (2009) ("unlawfulness is not a separate element of the offense").

¶ 17    It is undisputed that the defendant was driving on the night of the accident. It is also undisputed that he admitted to Graham that his drug test had come back positive and that he had ingested methamphetamine at some unspecified time, just not on the night of the accident. The State presented testimony from Anderson, a State Police forensic scientist, who analyzed two urine samples taken from the defendant that night at the hospital. Anderson

stated unequivocally, and to a reasonable degree of scientific certainty, "I found methamphetamine in both of the urine samples that I tested." Dr. Staubus stated that the urine samples did not contain detectable or realistic amounts of amphetamines, but he did not dispute that there was any amount, even a trace, of methamphetamine in the defendant's urine.

¶ 18    Viewing this evidence in the light most favorable to the prosecution, and drawing all inferences from it in favor of the prosecution, we conclude that the State satisfied its burden of proof. Although the evidence did not establish exactly when the defendant last used methamphetamine, a rational jury could have found that his last use was sufficiently recent that some remnants of the drug remained in his urine on the night of the accident. Such an inference is supported by Anderson's testimony that it is common to find a drug in a person's urine, but not in his blood.

¶ 19    The defendant insists that the State was required to prove that the substance in his urine was actually methamphetamine, and not a methamphetamine precursor, such as ephedrine or pseudoephedrine, which broke down into a metabolite of methamphetamine. See 720 ILCS 646/10 (West 2008) (defining "methamphetamine precursor"). This is pure conjecture. The fact that other substances may give a positive test result for the presence of methamphetamine is irrelevant without some evidence that the defendant had used such a substance. There was none. There was evidence, however, that he had used methamphetamine, and evidence that no other substances in his urine could have yielded a false positive result.

¶ 20    We turn to the State's appeal, and the second issue in this case–namely, whether the proximate cause requirement of section 11-501(d)(1)(F) means that the State must prove the defendant's drug use, rather than his driving, caused the deaths. Both parties point to the plain language of the statute. The State argues that section 11-501(d)(1)(F) requires simply a causal connection between the misdemeanor DUI and the death. According to the State, when the underlying offense does not require proof of impairment, neither does its enhancement. The defendant agrees that section 11-501(d)(1)(F) requires such a causal connection, but he contends that the State must prove such a connection with evidence that the defendant was impaired. On this issue of statutory interpretation, our review is *de novo*. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996).

¶ 21    The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent, and the plain language of the statute is the best indication of that intent. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009). The entire statute must be read as a whole, considering all relevant parts. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). In determining the legislature's intent, however, we may consider not only the statutory language, but also the reason and necessity for the law, the problems that lawmakers sought to remedy, and the goals that they sought to achieve. *People v. Morris*, 219 Ill. 2d 373, 383 (2006).

¶ 22    In *People v. Fate*, 159 Ill. 2d 267 (1994), we discussed the legislature's intent behind prohibiting so-called "drug driving" in section 11-501(a). We stated:

"There is no dispute that the statute is intended to keep drug-impaired drivers off

of the road. At the lowest levels of drug ingestion, no one is impaired. At the highest levels, all are impaired. In the vast middle range, however, the tolerance for drugs varies from person to person and drug to drug. In this range, depending on the drug and depending on the person, some will be impaired and some will not be impaired at all. ***

*** 

*** The flat prohibition against driving with any amount of a controlled substance in one's system was considered necessary because 'there is no standard that one can come up with by which, unlike alcohol in the bloodstream, one can determine whether one is *** driving under the influence.' " *Id.* at 269-70 (quoting 86th Ill. Gen. Assem., Senate Proceedings, May 25, 1989, at 23 (statements of Senator Barkhausen)).

¶ 23    In concluding that the statute was a reasonable exercise of the State's police power, we noted that it creates an absolute bar to driving after ingesting a controlled substance, "without regard to physical impairment." *Id.* at 271. That is, the legal fiction of presumed impairment that we adopted in the context of driving with a blood-alcohol content over 0.10 applies with equal force in the context of drug driving. *Id.* at 270 (citing *People v. Ziltz*, 98 Ill. 2d 38 (1983)). Indeed, while it is possible to determine scientifically the amount of alcohol that renders a driver impaired, it is not possible to do the same for drugs. *Rodriguez*, 398 Ill. App. 3d at 439.

"Unlike the blood alcohol concentration test used to measure alcohol impairment, there is no useful indicator of impairment from such drugs because they are fundamentally different from alcohol. Essentially, there can be no meaningful quantification because of the dangers inherent in the drugs themselves and in the lack of potency predictability." *State v. Phillips*, 873 P.2d 706, 710 (Ariz. Ct. App. 1994).

¶ 24    As we have noted, aggravated DUI is simply misdemeanor DUI with an aggravating factor, which turns the offense into a felony. "The essential and underlying criminal act, however, remains the same: driving while under the influence. The physical injury caused to others by driving while under the influence produces the felony." *Quigley*, 183 Ill. 2d at 10.

¶ 25    Under section 11-501(d)(1)(F), the violation of section 11-501(a) must be the proximate cause of another person's death.

¶ 26    In Illinois, a driver may commit misdemeanor DUI in six ways. Four ways require proof that a driver's ingestion of alcohol or drugs impaired his ability to drive. See 625 ILCS 5/11-501(a)(2) through (a)(5) (West 2008). Two ways do not. See 625 ILCS 5/11-501(a)(1), (a)(6) (West 2008).[1] The legislature has enacted "strict liability" violations (*Ziltz*, 98 Ill. 2d at 42), as well as violations that require proof of impairment. It also has enacted sentencing enhancements that incorporate both types of violations. Any misdemeanor DUI can become

_____

[1]Because impairment is not an element of misdemeanor DUI as set forth in section 11-501(a)(1) and section 11-501(a)(6), DUI, or driving "under the influence," may be an inaccurate title for violations of these subsections. Such violations are essentially driving while presumed impaired.

aggravated DUI if the violation causes a death. Accordingly, whether proof of impairment is necessary to sustain a conviction for aggravated DUI under section 11-501(d)(1)(F) depends upon whether impairment is an element of the underlying misdemeanor DUI. A driver with controlled substances in his body violates section 11-501(a)(6) simply by driving. When an aggravated DUI charge is based on a violation of that section, section 11-501(d)(1)(F) requires a causal link only between the physical act of driving and another person's death. In such a case, the central issue at trial will be proximate cause, not impairment. A defendant who is involved in a fatal motor vehicle accident while violating section 11-501(a)(6) is guilty of only misdemeanor DUI, where his driving was not a proximate cause of the death.

¶ 27    The defendant insists the appellate court's decision is supported by *People v. Merritt*, 343 Ill. App. 3d 442 (2003). *Merritt* is inapposite. In that case, the defendant struck and killed a jogger while driving. She was charged with, *inter alia*, misdemeanor DUI under section 11-501(a)(1), misdemeanor DUI under section 11-501(a)(2), and two corresponding counts of aggravated DUI. Following a bench trial, she was convicted of aggravated DUI. The trial court did not indicate which misdemeanor violation was enhanced–the violation requiring proof of impairment or the violation where impairment is presumed. And the appellate court failed to clarify the trial court's ruling by mentioning both evidence of the defendant's impairment, as well as her alcohol level. *Merritt*, 343 Ill. App. 3d at 448. If the defendant there had been charged only with misdemeanor DUI under section 11-501(a)(1), the State would not have had to provide evidence of her impairment in order to show the violation was a proximate cause of the victim's death.

¶ 28    Here, as we have held, the State proved the defendant guilty of misdemeanor DUI beyond a reasonable doubt. It also proved beyond a reasonable doubt that the defendant's driving was a proximate cause of the victims' deaths. Therefore, the State proved the defendant guilty of aggravated DUI.

¶ 29                                          CONCLUSION

¶ 30    For the reasons that we have stated, the judgment of the appellate court is reversed, and the defendant's conviction and sentence for aggravated DUI are reinstated.

¶ 31    Appellate court judgment reversed;
¶ 32    circuit court judgment affirmed.