**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180011-U

Order filed January 8, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Stark County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0011 Circuit No. 16-CF-5 |
| SCOTT A. PETTY, | ) ) ) | The Honorable Thomas A. Keith, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Lytton concurred in the judgment.
Justice Schmidt dissented.

_____

**ORDER**

¶ 1     *Held*:   The State failed to prove beyond a reasonable doubt that the presence of amphetamine and benzodiazepine in Defendant's urine results from the unlawful consumption of methamphetamine.

¶ 2     The State charged Scott A. Petty with, *inter alia*, one count of aggravated driving a vehicle while under the influence of methamphetamine, in violation of 625 ILCS 5/11-501(a)(6) (2015). Following a stipulated bench trial, the trial court found Petty guilty of the offense charged and sentenced him to nine years in prison. Petty now appeals, arguing: (1) the trial court

erred in failing to suppress the State's evidence; (2) the State's evidence was insufficient to sustain his conviction' and (3) section 5/11-501(a) is unconstitutional. We reverse and vacate Petty's conviction.

¶ 3                                FACTS

¶ 4        On November 9, 2015, Stark County Sheriff's Deputy Dustin Schaill responded to a reported car crash on Illinois Route 40 at approximately 630 feet north of 800 N. Bradford, Penn Township. Schaill arrived on site at about 5:13 P.M. He observed a Bradford Rescue unit removing Petty from his van in the southbound lane facing east. The front of Petty's van was heavily damaged and seemed to have collided with another car. Petty did not appear to be coherent. Officer Todd Marquez of the Bradford Police Department also responded to the crash and assisted with traffic control.

¶ 5        The other car was in the northbound ditch and had significant damage from what appeared to be a frontal collision. The Bradford Rescue unit removed the driver, Gina Masters, from the crash site and air-lifted her to OSF/Saint Francis Medical Center (Saint Francis) in Peoria. Petty was transported via ambulance to the same location. While Schaill was in transit, he learned that Masters had died en route to Saint Francis. At the crash site, Officer Marquez observed drug paraphernalia and a substance he believed to be cannabis inside Petty's van. Marquez informed Schaill of his observations and collected the items.

¶ 6        Petty arrived at Saint Francis at about 6:43 P.M. At about 6:50 P.M., Dr. Jennifer E. Schmidt ordered that a urine sample be drawn from Petty. After Deputy Schaill arrived at Saint Francis, he placed Petty under arrest for driving under the influence and read him the motorist's implied consent warning at about 9:02 P.M., and at about 9:25 P.M. independently signed a

2

separate request for a urine draw. At the time, Petty was semi-conscious, severely injured and incoherent. A single urine sample was collected from Petty at 4:00 A.M. the following morning.

¶ 7  The State filed four criminal charges against Petty on March 10, 2016. Count 1 alleged a Class 2 felony offense in violation of 625 ILCS 5/11-501(a)(6) (2015). It stated that Petty, "while under the influence of methamphetamine as listed in the Methamphetamine Control and Community Protection Act, drove [his van], causing [it] to strike the vehicle driven by Gina M. Masters, thereby causing the death of Gina M. Masters, and [Petty's] driving in violation of Section 11-501(a)(6) was a proximate cause of the death of Gina M. Masters ***."

¶ 8  Petty filled two separate motions to suppress the urine draw and test results. In the first motion, he alleged that the urine draw was performed without first obtaining his consent. Specifically, he argued that the urine draw was not part of his medical treatment and was conducted without probable cause. The trial court denied the motion, ruling that the Illinois implied consent statute, 625 ILCS 5/11-501.1 (2015), creates an exception to the warrant requirement of the Fourth Amendment.

¶ 9  In his second motion, Petty argued that the trial court should suppress all the findings of the urine analysis obtained from his sample. He contended that, although the test was performed for medical use only and not for legal purposes, the medical facility turned over the results without his consent and without a warrant. The trial court denied Petty's second motion on September 13, 2017, ruling that the hospital records would come in under the business records exception to the hearsay rule.

¶ 10  On October 6, 2017, Petty executed a "waiver of jury and a plea of not guilty" form. A week later, the parties tendered following facts in stipulation: that Schaill and Marquez would testify to their observations at the crash site and on the date of the accident; that Medical

3

Examiner J. Scott Denton would testify that he performed an examination of Masters on November 11, 2015 and determined that she died "from multiple blunt injuries due to a motor vehicle collision ***;" that Dr. Schmidt would testify that she ordered an analysis of Petty's urine from which amphetamine and benzodiazepines were detected; and that Forensic Scientist Joni C. Little would testify that she analyzed 0.2 grams of the white powder found in Petty's car and detected the presence of methamphetamine. Petty and counsel for the parties signed the written stipulation form.

¶ 11      In the stipulations, Petty reserved the right to raise "evidentiary objections to the admissibility of [the] test results as previously argued in [his] pretrial motions." He stated that he would present testimony from Ronald Henson regarding "the weight to be given to the test results."

¶ 12      The parties then proceeded to a stipulated bench trial. At the bench trial, Petty stipulated to the facts previously tendered. Counsel for the defense explained that Petty was stipulating only that the evidence would be as tendered. Ronald Henson never testified, and no additional testimony was presented.

¶ 13      The trial court ruled as followed:

> "I find that there is a factual basis to support a finding of beyond a reasonable doubt that the defendant is guilty of Count One as charged for the aggravated driving of a vehicle under the influence. His stipulation is accepted, and it is ordered and directed that the defendant is found guilty of Count one of the indictment."

4

¶ 14     The court subsequently sentenced Petty to nine years in prison. On November 14, 2017, Petty timely filed a motion for a new trial arguing, *inter alia*, that the evidence was insufficient to sustain his conviction. The trial court denied his motion.

¶ 15     This appeal now follows.

¶ 16                                          ANALYSIS

¶ 17     On appeal, Petty contends that the State failed to show that he consumed methamphetamine as defined in the Methamphetamine Control and Community Protection Act. The parties only stipulated to the presence of two substances in his urine: amphetamine and benzodiazepine. Petty argues that the evidence is insufficient to sustain the charge because the State presented no evidence that those compounds resulted from his consumption of methamphetamine. We agree with Petty and vacate his conviction.

¶ 18     In reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Holliday*, 2019 IL App (3d) 160315, ¶ 10.  A conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *Id.* In reviewing the evidence presented, this Court should "allow all reasonable inferences from that evidence to be drawn in favor of the [State]." *People v. Martin*, 2011 IL 109102, ¶ 15. However, this Court "should not make random speculation in favor of the [State]." *People v. Dye*, 2015 IL App (4th) 130799, ¶ 12. Where review of the evidence turns on a "statutory interpretation, our review is de novo." *Martin*, 2011 IL 109102, ¶ 20.

¶ 19     Petty was charged with the offense of aggravated driving of a vehicle while under the influence of methamphetamine, in violation of subsection 5/11–501(a)(6) of the Vehicle Code.

5

Subsection (a)(6) provides: "A person shall not drive or be in actual physical control of any vehicle within this State while *** there is any amount of a drug, substance, or compound in the person's breath, blood, or urine resulting from the unlawful use or consumption of *** methamphetamine as listed in the Methamphetamine Control and Community Protection Act ***." 625 ILCS 5/11-501(a) (6) (2015).

¶ 20    The State first contends that "methamphetamine is an amphetamine, hence the name 'methamphetamine.'" The State thus argues that a reasonable inference could be drawn that the amphetamine and benzodiazepine found in Petty's blood were salts, optical isomers, salts of an optical isomer, or analog thereof, from "which the methamphetamine had been metabolized." We disagree.

¶ 21    In reviewing the sufficiency of the evidence, this Court "should draw only reasonable inferences in favor of the [State]; we should not make random speculations in favor of the prosecution." *Dye*, 2015 IL App (4th) 130799, ¶ 12. Whether the metabolization of methamphetamine into amphetamine, benzodiazepine, or both has occurred entails a level of chemical knowledge not ordinarily possessed by the average person. Thus, a determination by the trier-of-fact that the presence of either chemical compound results from the consumption of methamphetamine requires competent testimony from a person having such specialized knowledge. To sustain Petty's conviction absent such testimony would be tantamount to making a random speculation regarding the metabolization of methamphetamine in favor of the State.

¶ 22    The State's contention also fails because the applicable statute specifically precludes it. The Methamphetamine Control and Community Protection Act defines methamphetamine as "the chemical methamphetamine *** or any salt, optical isomer, salt of optical isomer, or analog thereof, *with the exception of *** any other scheduled substance with a separate listing* under

6

the Illinois Controlled Substances Act." 625 ILCS 5/11-501(a)(6) (2015) (emphasis added). Amphetamine is listed as a controlled substance under subsection 570/206 (d)(1) of the Controlled Substances Act, whereas methamphetamine and "its salts, isomers, and salts of its isomers" are separately listed under subsection 570/206(d)(2) of that act. See 720 ILCS 570/206(d)(1) (2015); 720 ILCS 570/206(d)(2) (2015). So even if one could appropriately infer without competent testimony that amphetamine is a "salt" or "isomer" of methamphetamine simply because of its name, the plain language of both the Illinois Controlled Substances Act and the Methamphetamine Control and Community Protection Act excludes amphetamine as a predicate for a subsection 11–501(a)(6) violation based on consuming methamphetamine. 625 ILCS 5/11-501(a)(6).

¶ 23 Finally, the State contends that Petty failed to argue in the trial court, that the presence of amphetamine and benzodiazepine is insufficient to establish consumption of methamphetamine and has, therefore, "forfeited the argument on appeal." The State also contends that this Court can sustain the decision of the trial court on any grounds supported in the record regardless of whether the trial court relied on the grounds and regardless of whether the trial court's reasoning was correct. The State seems to conclude from these contentions that the presence of methamphetamine in a white powder collected from Petty's van supports an inference that he unlawfully consumed methamphetamine. We again disagree.

¶ 24 First, this Court has previously found that a "challenge to the sufficiency of the evidence is not subject to the waiver rule and can be raised by a defendant for the first time on direct appeal, even if not properly preserved ***." *People v. Muhammad*, 398 Ill. App. 3d 1013, 1018 (2010). Thus, Petty's challenge to the sufficiency of the evidence on appeal is not limited to his theory before the trial court. And second, as previously noted, our duty is to draw reasonable

inferences from the evidence, not to "make random speculations in favor of the [State]." *Dye*, 2015 IL App (4th) 130799, ¶ 12. There is nothing in the stipulated facts showing that Petty consumed methamphetamine, regardless of whether the evidence showed that Officer Marquez collected methamphetamine from his car.

¶ 25                               CONCLUSION

¶ 26        The judgment of the circuit court of Stark County is vacated and the conviction of Scott A. Petty's conviction for aggravated driving while under the influence of methamphetamine is vacated.

¶ 27        As a result of our ruling, we need not address Petty's arguments regarding (1) the constitutionality of section 5/11-501(a), and (2) the suppression of the evidence.

¶ 28        Conviction vacated.

¶ 29        JUSTICE SCHMIDT, dissenting:

¶ 29        I respectfully dissent. In my opinion, the evidence, when viewed in the light most favorable to the State, supports the trial court's finding that defendant violated subsection 11-501(a)(6) of the Vehicle Code.

¶ 30        The majority acknowledges that when reviewing the sufficiency of the evidence, we must ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Holliday*, 2019 IL App (3d) 160315, ¶ 10. The majority continues that the reviewing court will not reverse unless the evidence is so improbable so as to create a reasonable doubt of defendant's guilt. *Id.* But then the majority does just that.

¶ 31        The trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances but rather be satisfied that all evidence, taken together, establishes defendant's guilt. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Defendant struck a car and killed the

8

driver. When the paramedics removed defendant from his vehicle, he was incoherent. Officers found drug paraphernalia and a white powdery substance in his car. A forensic scientist identified this substance as methamphetamine. Defendant's urinalysis returned a positive result for benzodiazepines and amphetamine. The subsection under which the State charged defendant criminalizes operating a motor vehicle when a defendant has any amount of a "drug, substance, or compound" in his "breath, blood, or urine resulting from the unlawful use or consumption of *** a controlled substance listed in the Illinois Controlled Substances Act, *** or methamphetamine." 625 ILCS 5/11-501(a)(6) (2014). The State put forth a common sense argument: methamphetamine is an amphetamine. See *Methamphetamine*, THE NATIONAL INSTITUTE ON DRUG ABUSE (May 2019), https://www.drugabuse.gov/publications/drugfacts/methamphetamine. The consumption of methamphetamine metabolizes down into amphetamine. See Robert West *et al.*, *Differentiating Medicinal from Illicit Use in Positive Methamphetamine Results in a Pain Population,* 37(2) J. OF ANALYTICAL TOXICOLOGY 83, 85 (2013) ("[Methamphetamine] is metabolized by hepatic microsomal enzymes to amphetamine."). Defendant had methamphetamine in his vehicle and paraphernalia to consume it. He tested positive for amphetamines. Therefore, one can make a reasonable inference that defendant was under the influence of methamphetamine at the time of the collision.

¶ 32 The majority also contends the State failed to satisfy the statutory requirements to sustain a conviction under subsection 11-501(a)(6) of the Vehicle Code. Subsection 501(a)(6) describes not only consumption of methamphetamine but also any drug listed in the Illinois Controlled Substances Act. Referring to the Illinois Controlled Substances Act, one can see that both amphetamine and methamphetamine are included. 720 ILCS 570/206(d)(1), (2) (West 2014). Therefore, the State proved defendant was in violation of the charging statute.