**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190269-U

Order filed September 16, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0269 Circuit No. 17-CF-722 |
| STEPHANIE L. LAWSON, | ) ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

**ORDER**

¶ 1       *Held*:   The circuit court did not abuse its discretion by finding that no extraordinary circumstances existed that would warrant a sentence of probation.

¶ 2       Defendant, Stephanie L. Lawson, appeals her sentence of three years' imprisonment for the offense of aggravated driving under the influence of alcohol (DUI). Defendant argues that the Peoria County circuit court erred by finding that no extraordinary circumstances warranting a sentence less than imprisonment existed. We affirm.

¶ 3                              I. BACKGROUND

¶ 4          Defendant was charged with two counts of aggravated DUI (625 ILCS 5/11-501(d)(1)(F) (West 2016)). The indictment alleged that defendant was involved in a motor vehicle accident that resulted in the death of Michelle Kline-Stringer. Count I alleged that defendant knowingly drove a motor vehicle while having in her blood or urine a drug or substance resulting from the unlawful use or consumption of cocaine. Count II alleged that defendant knowingly drove a vehicle while under the combined influence of alcohol, cocaine, and cannabis to a degree that rendered her incapable of driving safely.

¶ 5          The matter proceeded to a stipulated bench trial. The parties stipulated that several individuals would testify that they observed the victim's vehicle stopped on a bridge with its hazard lights flashing at approximately 5:30 a.m. on the morning of the incident. Officer Charles Bruess drove by the victim's vehicle at approximately 5:30 a.m. Shortly after he passed it, he heard a loud bang. He turned his vehicle around, and defendant flagged him down. He observed the victim in the driver's seat of her vehicle. She was unresponsive. A doctor would testify that the victim died due to her injuries later that morning.

¶ 6          Officer Donald Buhl would testify that defendant told him that she saw the victim's vehicle braking and slowing when she drove onto the bridge. Defendant looked to her right to see the sunrise over the river. When she looked forward again, the victim's vehicle had completely stopped in defendant's lane. Defendant attempted to steer to the left, but she was unable to avoid the victim's vehicle. She was driving at a speed of approximately 55 miles per hour. At the scene, defendant told Buhl that she had consumed one drink that evening. A few days later, she told Buhl that she had also consumed a marijuana "edible" approximately 6½ hours before the incident.

2

¶ 7        Buhl used gathered evidence, momentum, and trigonometry to determine that defendant's vehicle was traveling at a speed of 52 miles per hour at the time of the collision, and the victim's vehicle was completely stopped. Sensing diagnostic module data did not record any braking on the part of defendant's vehicle prior to the collision. Buhl determined that defendant's vehicle was at fault for the collision.

¶ 8        Officer Michael Bishoff would testify that he spoke with defendant at the hospital at approximately 6:45 a.m. on the morning of the incident. Defendant said that she had consumed one drink at 2 a.m. that morning. Defendant agreed to provide blood and urine samples, and the samples were collected by a nurse. A forensic scientist testified that she tested the blood and urine samples. The testing revealed that defendant had a blood alcohol level of 0.022. A drug analysis of defendant's urine revealed cocaine, Tetrahydrocannabinol (THC), and metabolites. A forensic toxicologist would testify that he tested one tube of defendant's blood from the DUI kit for THC and cocaine, and her blood contained between ½ and 1 ng/mL of cocaine.

¶ 9        Bruess, Buhl, and medical personnel who treated defendant at the hospital did not note any problems with defendant's balance, speech, or gait after the collision. They also did not notice any odors emanating from her body or breath, and they did not observe her eyes to be bloodshot.

¶ 10       The court found defendant guilty of aggravated DUI as charged in count I of the indictment. The State dismissed count II.

¶ 11       A presentence investigation report (PSI) was prepared. The PSI indicated that defendant tested positive for alcohol, cocaine, and cannabis while released on bond. On a second occasion, she tested positive for cocaine, and her bond was revoked. Defendant had no known history of delinquency or criminality. She had one conviction for failure to reduce speed. She also received

3

dispositions of court supervision for two other prior traffic offenses. She had two jobs at the time of the incident, and she reported that both would be willing to rehire her if she was released from custody. Defendant reported that she had been sober for four months. Before that, she drank alcohol socially. She did not believe she had a problem with alcohol. She reported using cocaine and cannabis in the past. She said she could "go without it," but would use it if it was there.

¶ 12       A sentencing hearing was held. Two of the victim's daughters read victim impact statements. The State argued that defendant should receive a term of imprisonment and that no extraordinary circumstances existed that would warrant a sentence of probation. Defense counsel argued that extraordinary circumstances existed. Counsel noted that defendant had a daughter with special needs who had always lived with her. Defendant gave a statement in allocution.

¶ 13       The court sentenced defendant to three years' imprisonment. The court said that it had considered the PSI, the arguments of the attorneys, defendant's statement in allocution, the statements of the victim's family members, the statutory factors in aggravation and mitigation, the history and character of defendant, and the nature of the offense. The court stated that it did not believe defendant intended to hurt anyone on the morning of the incident. The court noted that defendant had a daughter, had had two jobs, and was contrite. The court also noted that defendant had consumed controlled substances after her arrest in the instant case.

¶ 14       The court stated: "[T]he legislature intended for people who consume contraband and lightning strikes and somebody dies, they intend for them to go to prison. *** Except in extraordinary circumstances." The court stated that the legislature "wanted the message to go to every judge and to every driver that if you consume a contraband on the list—cocaine, heroin, the others—it's almost of no consequence, of no matter that there was a relationship between the consumption and the crash." The court stated that it was to defendant's benefit that the officers

4

defendant interacted with after the collision did not observe any signs of intoxication. The court noted, however, that people did not always show the same signs of intoxication based on their tolerance levels. The court said that it did not know if the collision would have occurred if defendant had not drunk alcohol or consumed contraband. The court noted that others were able to avoid hitting the victim's vehicle but defendant was not.

¶ 15        The court stated that it "kind of" wanted to sentence defendant to probation, but it did not find that extraordinary circumstances existed that required probation. The court stated that defendant's care for her daughter was commendable, but it "[did] not relieve [her] of what the legislature intended." After finding that a sentence of probation was not warranted, the court stated that it would not give defendant "one day more than the minimum" sentence of imprisonment.

¶ 16                                    II. ANALYSIS

¶ 17        Defendant argues that the circuit court abused its discretion by determining that extraordinary circumstances warranting a sentence of probation did not exist. Specifically, defendant contends that extraordinary circumstances existed because there was no evidence that she was actually impaired at the time the vehicle she was driving struck the victim's vehicle. Defendant further contends that the stipulated evidence illustrated that she was not impaired at the time of the collision. Defendant requests that we vacate her sentence and remand the matter for resentencing.

¶ 18        The State contends that defendant's argument that the court abused its discretion by finding that no extraordinary circumstances were present is, in substance, a request that we remand the cause for the circuit court to enter a sentence of probation, which we lack authority to do. See *People v. Rege*, 64 Ill. 2d 473, 482 (1976); *People v. Lawson*, 2018 IL App (4th) 170105,

5

¶ 25. Defendant argues that remanding the matter for resentencing would not be an implicit directive to the circuit court to impose a sentence of probation. We need not decide whether defendant's argument on appeal is an implicit request to remand for the imposition of a sentence of probation. Even assuming that it is not, the circuit court did not abuse its discretion by finding that no extraordinary circumstances existed in this case.

¶ 19 Section 11-501(d)(2)(G) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(d)(2)(G) (West 2016)) provides that a defendant who violates section 11-501(d)(1)(F) of the Code, as in the instant case, shall be sentenced to a term of imprisonment of not less than 3 years and not more than 14 years "unless the court determines that extraordinary circumstances exist and require probation." Under the plain language of the statute, it is presumed that a defendant shall serve a prison sentence. *People v. Rennie*, 2014 IL App (3d) 130014, ¶ 30. The circuit court may override this presumption by determining, in its discretion, that "extraordinary circumstances" exist. *Id.* " 'Extraordinary' circumstances are those that are 'not ordinary, "highly unusual," and "not commonly associated with a particular thing or event." ' " *Id.* ¶ 31 (quoting *People v. Vasquez*, 2012 IL App (2d) 101132, ¶ 70, quoting Black's Law Dictionary 260 (8th ed. 2004)). The presence of extraordinary circumstances is rare. *Id.*

¶ 20 A determination that extraordinary circumstances exist is within the discretion of the circuit court. *People v. Hill*, 2012 IL App (5th) 100536, ¶ 28. "Generally, a court abuses its discretion when its decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *People v. Ortega*, 209 Ill. 2d 354, 359 (2004).

¶ 21 In the instant case, defendant was convicted of aggravated DUI under sections 11-501(a)(6) and (d)(1)(F) of the Code (625 ILCS 5/11-501(a)(6), (d)(1)(F) (West 2016)), which required the State to prove that she drove a vehicle while there was any amount of a controlled

6

substance in her breath, blood, or urine and that her driving resulted in the death of another person. The State was not required to present evidence of actual impairment. *People v. Martin*, 2011 IL 109102, ¶ 26. Our supreme court has held that the legislature intended for aggravated DUI under this section to be a strict liability offense. *Id.*; *People v. Way*, 2017 IL 120023, ¶ 23.

¶ 22     Thus, the legislature enacted the statutory scheme at issue—*i.e.*, 625 ILCS 5/11-501(a)(6), (d)(1)(F), (d)(2)(G) (West 2016)—with the intent that no proof of actual impairment would be required and that a defendant would be sentenced to imprisonment in all but "extraordinary circumstances." See *Martin*, 2011 IL 109102, ¶ 26; *Rennie*, 2014 IL App (3d) 130014, ¶ 30.

¶ 23     Accordingly, it was not arbitrary, fanciful, or unreasonable for the circuit court to find that the lack of evidence of actual impairment in this case did not constitute "highly unusual" or "extraordinary" circumstances. The court acknowledged that officers and medical personnel who interacted with defendant after the collision did not observe signs of impairment. However, the court also noted that people react to the ingestion of controlled substances differently based on their tolerance levels and that several other individuals were able to avoid hitting the victim's vehicle. The circuit court was within its discretion in finding that extraordinary circumstances did not exist.

¶ 24                              III. CONCLUSION

¶ 25     The judgment of the circuit court of Peoria County is affirmed.

¶ 26     Affirmed.