NOTICE
Decision filed 11/07/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200411-U

NO. 5-20-0411

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Shelby County. |
| | ) | |
| v. | ) | No. 20-CF-19 |
| | ) | |
| STEPHANIE A. McELROY, | ) | Honorable |
| | ) | Amanda S. Ade-Harlow, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the evidence was sufficient to establish, beyond a reasonable doubt, that the defendant was guilty of aggravated driving while under the influence of a drug, and where the circuit court did not abuse its discretion in sentencing her, and where any argument that the judgment of conviction should be reversed, vacated, or modified would lack merit, the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of conviction is affirmed.

¶ 2    The defendant, Stephanie A. McElroy, appeals from a judgment of conviction that was entered by the circuit court of Shelby County after it found her guilty of aggravated driving while under the influence of a drug and sentenced her to imprisonment. (The defendant has served her term of imprisonment, and is now serving a term of mandatory supervised release.) Her appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit, and on that basis, it has filed a motion to withdraw as counsel and

1

a brief discussing potential issues on appeal. See *Anders v. California*, 386 U.S. 738 (1967). OSAD gave proper notice to the defendant. This court granted the defendant ample opportunity to file a written response to OSAD's motion, or a brief, memorandum, etc., explaining why her appeal has merit, but she has not taken advantage of that opportunity. Having examined OSAD's *Anders* motion and brief, along with the entire record on appeal, this court concludes that this appeal has no merit whatsoever. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of conviction is affirmed.

¶ 3                                    BACKGROUND

¶ 4    In March 2020, the State filed an information charging the defendant with two counts of aggravated driving while under the influence of a drug (625 ILCS 5/11-501(a)(6), (d)(1)(A) (West 2018)), a nonprobationable Class 2 felony (*id.* § 11-501(d)(2)(C)). In count I, the drug alleged was methamphetamine; in count II, it was hydrocodone. The information alleged that the defendant drove a car on June 20, 2018. The information also alleged that she had two prior convictions for driving under the influence (DUI), and one prior court supervision for DUI, in three separate cases.

¶ 5                            *Pretrial Motion to Dismiss*

¶ 6    Several days after the State filed those two felony counts against the defendant, the defendant, through counsel, filed a motion to dismiss them. According to the defendant, those two new felony charges arose from the same facts and circumstances as two pending non-felony charges—failure to reduce speed to avoid an accident, which was case No. 18-TR-273, and driving while under the influence of drugs, which was case No. 18-DT-14—and those two non-felony charges were scheduled for jury trial in a matter of "weeks." The State had filed the two felony

2

counts, asserted the defendant, as a way of punishing her for exercising her right to trial on the non-felony charges, a strategy that she deemed "wholly inappropriate."

¶ 7 On March 18, 2020, the circuit court heard argument on the defendant's motion to dismiss the felony counts. Defense counsel argued that the filing of the felony counts just weeks before the defendant's traffic trial on the non-felony charges, and almost two years after the traffic incident that had led to all of them, violated "the spirit" of fairness and due-process principles. The State opposed the motion on the ground that it had three years from the incident date, in June 2018, in which to file felony charges. "This case *** is simply a [*sic*] elevation of the existing DUI citation based on her priors." After considering the arguments, the court denied the defendant's motion.

¶ 8                                     *The Bench Trial*

¶ 9 On August 10, 2020, the defendant, defense counsel, and the state's attorney appeared before the court. The defendant indicated her desire to waive her right to a jury trial and to have a bench trial instead. She confirmed that she had signed a written "Waiver of Trial by Jury" form, wherein she had waived her right to a jury trial and had "consent[ed] that said cause be tried by the Court." She indicated that nobody had threatened, forced, or coerced her into signing the form, and that nobody had promised her anything in order to persuade her to waive her right to a jury trial. Finding that the defendant's waiver was knowing and voluntary, the court accepted it, and scheduled the cause for bench trial.

¶ 10 The next day, August 11, 2020, the cause proceeded to a bench trial on aggravated driving while under the influence of a drug, as charged in counts I and II of the information. At the same time, the court tried the two non-felony charges in case Nos. 18-TR-273 and 18-DT-14.

¶ 11    Darrell Gaston, a retiree from Shelbyville, testified that on June 20, 2018, at approximately 3 p.m., he was driving a truck westbound on Route 16 (Main Street) in downtown Shelbyville. As he sat at a red light, he saw a silver van "coming up the hill" on the sidewalk. The light changed, and Gaston started to move forward, but the silver van, also headed west, suddenly struck his truck in the passenger-side quarter panel, in the rear. The silver van continued driving until it stopped "halfway up the block probably." Gaston got out of his car to see whether everyone was all right. He walked up to the silver van and attempted to speak with the driver, who was alone in the van, but she "was in a daze" and "didn't know that [Gaston] was even there." Minutes later, a police officer arrived, and Gaston spoke with him. Alan Reynolds drove by, and asked Gaston if he was all right. Gaston was not seriously injured, but his wrist swelled sometime after the collision.

¶ 12    Alan Reynolds, a retiree from rural Shelby County, testified that on June 20, 2018, at approximately 3 p.m., he was driving westbound on Route 16 in Shelbyville when he saw a van ahead of him. The van was "a gray or a bluish color." It hit the curb, twice. Then, near an intersection very near the courthouse, the van struck the back of a pickup truck. After a short while, Reynolds drove up to the pickup and saw that its driver was Darrell Gaston, whom he knew. He asked Gaston whether he was alright, and Gaston indicated that he was. The driver of the van that struck Gaston's pickup was a "small female" whom Reynolds did not recognize. She was alone in the van.

¶ 13    Eric Culberson testified that on June 20, 2018, he was on duty as a Shelby County police officer. At approximately 3:18 p.m., he was at police headquarters when a dispatcher informed him that someone had reported a collision nearby. Culberson walked the block or so to the collision site and saw car parts in the roadway. Rounding the corner, he saw a silver minivan in the middle of Main Street, facing west. The minivan's front end was "heavily damaged", and its

4

sliding door was "dislodged, more or less." He walked up to the minivan to speak with its driver. The driver was the defendant, and she was alone in the minivan. Culberson asked the defendant what had happened, and the defendant answered, "They told me I hit a guy, but I didn't see him." After he requested her driver's license and proof of insurance, she immediately located her driver's license, but she held on to the license, staring at it. Culberson took the license from the defendant. As for proof of insurance, the defendant handed him a school identification card, which he said he did not need. The defendant appeared "out of it" and confused. When Culberson asked the defendant to exit the minivan, she started "pushing buttons" for the windows and doors. At that point, Culberson decided to help her out of the minivan. He opened the driver's door, held her by the arm, and helped her out. She was not in custody at that time, Culberson specified. "She appeared to have unsteady balance", and she steadied herself by placing her hand on the minivan. Culberson asked whether she had been drinking, and she answered in the negative. He asked whether she had taken drugs, and she answered that she had taken two Vicodin pills that were not prescribed for her. She also stated that she had had seizures, and was supposed to take medicine for that problem, but "hadn't in quite some time." Culberson asked for permission to administer field sobriety tests, and she consented.

¶ 14    Culberson and the defendant walked to the nearby sidewalk. There, Culberson began his first field sobriety test, the horizontal gaze nystagmus test, which he explained to the defendant verbatim from his manual. He observed that the defendant had "pinpoint pupils" and "a lack of smooth pursuit in both eyes", and "[o]n the right side [he] noticed distinct nystagmus and the onset of early nystagmus prior to 45 degrees." According to Culberson's manual, she had completely failed that test. The second test was the walk-and-turn test, which Culberson also explained through his manual. The defendant said she understood this test, and she elected to perform it

5

barefoot. The defendant lost her balance while listening to instructions, stepped off the line, did not touch heel to toe, and turned incorrectly at the end of the first nine steps and before the nine return steps. Such a performance constituted a failure, Culberson testified. Third and finally, Culberson explained the one-leg stand test, again using his manual, which the defendant said she understood. During this test, the defendant swayed a lot, used her arms to balance herself, and needed to put her raised foot down three times. Such a performance constituted failure, according to Culberson. Worried that the defendant might fall, Culberson told her to quit. Having seen the defendant fail all three field sobriety tests, Culberson concluded that she was under the influence of some substance. He arrested her.

¶ 15    At the Shelby County Sheriff's Office, Culberson wrote her a traffic citation for "DUI alcohol", but then changed his mind and wrote a citation for "DUI drugs." He asked the defendant to consent to giving a urine sample for drug analysis, and she did so consent. She submitted a urine sample. Culberson properly sealed the sample and placed it in an evidence locker.

¶ 16    On cross-examination, Culberson admitted that he could not distinguish between "pinpoint pupils" caused by drugs and those caused by seizures. He conceded that a seizure could adversely affect a person's physical balance. On recross, Culberson said that during his 13 years as a police officer, he encountered many people who were under the influence, and many people suffering medical emergencies. The defendant did not tell him, at any point during their interaction, that she was experiencing a seizure, or that she had experienced a seizure at the time she wrecked her minivan.

¶ 17    Testimony concerning the chain of custody of the defendant's urine sample was provided by Daine Burkhead, a sergeant and correctional officer with the Shelby County Sheriff's Office;

6

Brad Getz, a Shelbyville police officer who handled evidence for the department; and Larry Shelton, a forensic scientist in the toxicology section of the Illinois State Police crime lab.

¶ 18    Shelton, the forensic scientist, also tested the urine sample for various drugs, using standard procedures accepted in the scientific community.    He found that the urine contained methamphetamine and hydrocodone, plus their metabolites, amphetamine and dihydrocodeine.

¶ 19    The State offered, and court admitted over objection, the defendant's certified driver's abstract.  It showed, among other things, her violations of the DUI statute in 2002, 2003, and 2005.

¶ 20    For the defendant's case in chief, defense counsel offered a "Stipulated Statement—Defendant Medical History."  The State stipulated to the statement, and the court admitted it into evidence.    According to the statement, the defendant had been diagnosed with "generalized (clonic-tonic) seizure disorder" in 2016, and was prescribed "Keppra, an anti-convulsant medication."  The medication "ran out" sometime prior to the collision that occasioned the instant charges.

¶ 21    The defendant called one witness to testify at the trial, John Forcum of rural Shelby County.  Forcum testified that he had known the defendant for many years.  On June 20, 2018, he was with her until approximately five minutes before the collision.  He was a passenger in the defendant's minivan, as the defendant drove near "the spillway."  Suddenly, the defendant became "stiff as a board", with "her eyes rolled up in the head."  Forcum had to grab the wheel, and steer the car onto a parking lot, not far from the courthouse.  He "tried to get her conscious", but she barely responded.  He "took off to go get help", but then saw the defendant drive off in the minivan, "heading back towards town."  He "couldn't imagine that she was even able to drive", but thought that she might be headed for a hospital, for she surely needed medical attention, in Forcum's

7

opinion. Later that afternoon, he heard that the defendant had been involved in a collision and had been arrested for DUI.

¶ 22    The circuit court found the defendant guilty of both counts of aggravated driving while under the influence of a drug, as charged in counts I and II of the information. However, the court informed the defendant that she would be sentenced on count I (methamphetamine) alone, since "[t]his is all the same crime" and count II (hydrocodone) would merge with count I. As for the two non-felony offenses charged by traffic citations, the court found the defendant guilty of failure to reduce speed to avoid an accident, a fine-only offense, but found her not guilty of DUI in case No. 18-DT-14. The court ordered the preparation of a presentence investigation report (PSI). The defendant did not file a posttrial motion.

¶ 23                                   *Sentencing*

¶ 24    The PSI showed that the defendant, in 2002, was placed on court supervision for driving under the influence of alcohol. In 2003, in a different case, she was sentenced to two years of probation for driving under the influence of alcohol. In 2005, in another case, she was placed on probation for two years for driving under the influence of alcohol. During that time period, she also had two convictions for driving while her license was revoked or suspended.

¶ 25    On November 2, 2020, a sentencing hearing was held. The circuit court began by saying that it had made a mistake in finding the defendant not guilty of driving under the influence of alcohol, as charged in a citation in case No. 18-DT-14. The defendant should have been found guilty under the specific subsection under which the citation was written, the judge said. Therefore, the court changed the finding to one of guilty. However, the court informed the defendant, this change in the verdict would be inconsequential, anyway, since the citation's DUI

8

charge would merge with count I of the information, under the one-act-one-crime rule. The court and the parties then moved on to sentencing.

¶ 26    The State called just one witness at the sentencing hearing. Amelia Ohnesorge, a Shelby County probation officer, testified about her preparation of the PSI. The defendant called two witnesses. Amy Schaefer-Jones, the defendant's sister, testified that the defendant used to be a heavy abuser of drugs, however, to the best of her knowledge, she had stopped abusing them. The defendant was the caregiver for their 80-year-old mother, who was almost blind in one eye and hard of hearing, and who would need to be in a nursing home but for the care she received from the defendant. Jamie Bell, a niece of the defendant, testified that during the last two years, the defendant had been trying to "make something of her life," and Jamie did not think her aunt would reoffend. The defendant was the sole caregiver for her mother, Jamie's grandmother. The defendant shopped for her mother, cleaned her house, fed her animals, and did "everything" for her, according to Jamie. Defense counsel also submitted a letter from the defendant's other sister, who also stated that the defendant's continued presence was essential to their mother's well-being and even survival.

¶ 27    The court sentenced the defendant on count I only. She was sentenced to imprisonment for three years, to be followed by mandatory supervised release for two years.

¶ 28    The defendant filed a timely motion to reconsider sentence. She stated that, although she was grateful that her prison sentence was for the minimum term allowed by statute, the sentence was nevertheless excessive in light of the defendant's rehabilitative potential and health problems, as well as the hardship that such a sentence would impose upon her elderly mother. On December 8, 2020, the motion to reconsider sentence was denied. On December 9, 2020, defense counsel

filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (July 1, 2017). That same day, he filed a notice of appeal on behalf of the defendant, thus perfecting the instant appeal.

¶ 29                                    ANALYSIS

¶ 30    This appeal is from a judgment of conviction, which was entered by the circuit court after it found the defendant guilty of aggravated driving while under the influence of a drug and sentenced her to imprisonment for three years. As previously noted, the defendant's appointed appellate attorney, OSAD, has concluded that this appeal lacks merit, and has filed an *Anders* motion to withdraw, along with a brief. This court agrees with OSAD's assessment of the case. In the brief, OSAD discusses (no fewer than) six potential issues in this case, which this court examines in turn. (Four of the six issues relate to alleged errors at pretrial and at trial, which is surprising, given that the defendant did not even file a posttrial motion, but filed only a motion to reconsider sentence.)

¶ 31    The first potential issue discussed by OSAD is whether the circuit court abused its discretion when it denied the defendant's pretrial motion to dismiss the two felony counts contained in the information, both of which charged the defendant with aggravated driving while under the influence of a drug. It was on June 20, 2018—the same day that the defendant's minivan rear-ended Darrell Gaston's pickup truck—that police officer Culberson wrote the defendant a traffic citation for driving while under the influence of drugs. It was approximately 20 months later that the State filed the information that charged the defendant with the two felony counts. Several days after those two felony counts were filed, the defendant filed a motion to dismiss them, on the ground that the State was acting in order to punish the defendant for exercising her right to a trial on the non-felony charges. As the state's attorney observed during the March 2020 hearing on the defendant's motion to dismiss, "the State has three years to file felony charges from the date

10

of the occurrence." See 720 ILCS 5/3-5(b) (West 2018) (except for certain offenses not applicable here, State has three years to file felony charges). Here, the felony counts were filed well within the three-year limitations period. Furthermore, as OSAD observes in its *Anders* brief, section 111-3(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3(c) (West 2018)) requires the State to give notice to a defendant of any sentence enhancement based on prior convictions, and section 111-3(d) of the Code (*id.* § 111-3(d)) permits the State, at any time prior to trial, to amend the charge so that it complies with that requirement. Here, the State's information so informed the defendant that her sentence would be enhanced by her three previous incidents of driving while under the influence of alcohol. There was no basis for granting the defendant's pretrial motion to dismiss the two felony counts.

¶ 32     The second potential issue discussed by OSAD is whether the defendant knowingly waived her right to a jury trial. At the time of the waiver in August 2020, the defendant did not object contemporaneously to any of the court's allegedly erroneous admonitions, and she did not raise the issue in a written posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Therefore, the issue is procedurally defaulted. Even if it were not defaulted, it could not possibly result in a reversal. To be valid, a jury waiver must be knowing and voluntary. *People v. Bannister*, 232 Ill. 2d 52, 65-66 (2008). The circuit court has a duty to ensure that a defendant waives her fundamental right to a jury trial "expressly and understandingly", but it "need not give any specific admonition or advice for a defendant to make an effective jury waiver." *Id.* at 66. Here, as the transcript of the waiver proceeding makes clear, there can be no doubt that the defendant's waiver was not the result of threats, force, coercion, or promises made to her. She signed a written "Waiver of Trial by Jury" form, wherein she waived her right to a jury trial and "consent[ed] that said cause be tried

11

by the Court." There is no indication that the defendant did not know what she was doing or did not know what a waiver entailed.

¶ 33    The third potential issue is whether the State proved, beyond a reasonable doubt, that the defendant was guilty of counts I and II of the information, which charged aggravated driving while under the influence of a drug. The State was required to prove that the defendant drove or was in actual physical control of a vehicle while there was "any amount" of a drug in her urine resulting from the unlawful use or consumption of a controlled substance or methamphetamine. 625 ILCS 5/11-501(a)(6) (West 2018). (Note that the State was not required to prove a minimum concentration of the drug, or that the defendant's driving was actually impaired by the drug. See *People v. Martin*, 2011 IL 109102, ¶ 16.) The State's evidence showed that the defendant was driving a minivan when it collided with a pickup truck. In the moments before the collision, she had been driving erratically, and after the collision, she appeared "out of it" and said that she had taken Vicodin without a prescription. Samples of her urine showed the presence of methamphetamine and hydrocodone, plus their metabolites, amphetamine and dihydrocodeine. Based on this evidence, the State proved defendant guilty beyond a reasonable doubt.

¶ 34    The fourth issue is whether the circuit court abused its discretion by imposing an excessive sentence. The incident at issue here was the defendant's fourth violation of the DUI statute. A fourth violation of the DUI statute is a nonprobationable Class 2 felony. 625 ILCS 5/11-501(d)(2)(C) (West 2018). A Class 2 felony is punishable by imprisonment for a term of three to seven years. 730 ILCS 5/5-4.5-35(a) (West 2018). Here, the defendant was sentenced to imprisonment for a term of three years. Under the sentencing statutes, the court could not have imposed a more lenient sentence. The defendant could not possibly have fared any better. The excessive-sentence argument is wholly without merit.

12

¶ 35 The fifth issue is whether the circuit court committed plain error when it found the defendant guilty of DUI, as charged by citation, in case No. 18-DT-14, after it initially entered a verdict of not guilty in that case. However, as the court told the defendant at the start of her November 2020 sentencing hearing, the verdict in case No. 18-DT-14 was inconsequential, since that DUI would merge with the aggravated DUI charged in count I of the information. Where the error is harmless, it cannot lead to relief on appeal. This issue has no merit.

¶ 36 The sixth and final issue raised by OSAD in its *Anders* brief is whether the circuit court abused its discretion when it denied the defendant's motion to reconsider sentence. This issue is meritless for the same reason that OSAD's fourth potential issue—whether the circuit court abused its discretion by imposing an excessive sentence—is meritless.

¶ 37                                   CONCLUSION

¶ 38 No reversible error was committed in this case, and any argument to the contrary would lack merit. Accordingly, OSAD's *Anders* motion for leave to withdraw as counsel is granted, and the circuit court's judgment of conviction is affirmed.

¶ 39 Motion granted; judgment affirmed.

13