THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM G. ROBERTS, Defendant-Appellant.

Second District No. 2—01—0680

Opinion filed April 21, 2003.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Larry Wechter, of Law Office of Larry Wechter, of Geneva, for appellant.

Paul A. Logli, State's Attorney, of Rockford (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KAPALA delivered the opinion of the court:

Following a jury trial in the circuit court of Winnebago County, defendant, William G. Roberts, was convicted of one count of possession of a look-alike substance with the intent to deliver within 1,000 feet of public housing property (720 ILCS 570/407(b)(3) (West 2000)) and sentenced to 10 years and 10 months in prison. Additionally, he was ordered to pay $20 as a street value fine and $100 as a trauma center fine. Following the denial of his posttrial motions, defendant filed this timely appeal. For the following reasons, we affirm his conviction and sentence of 10 years and 10 months but reverse the imposition of the street value fine and the trauma center fine.

## FACTS

The facts necessary to our disposition are as follows. Rockford

police officer Jason Bailey testified that on December 7, 2000, he and his partner were patrolling a Rockford public housing project in plainclothes and an unmarked squad car. After observing defendant flagging down the officers, Officer Bailey stopped the unmarked car next to defendant.

Defendant leaned close to the driver's-side window and asked the officers if they wanted some "work." While asking this question, defendant reached into his right jacket pocket. Officer Bailey explained that in the drug trade vernacular the term "work" means crack cocaine.

At that point, defendant observed the radio in the car and stated the officers must be the police. The officers exited the vehicle, and Officer Bailey asked if defendant had anything illegal on his person and if he could search defendant. Defendant, after stating he was "clean," agreed to the search. Officer Bailey explained at trial that "clean" meant defendant did not possess anything illegal such as drugs or weapons. Upon searching defendant, the officers discovered a plastic bag in the jacket pocket into which defendant had earlier reached. Defendant then volunteered that the bag contained a substance made of nail glue and pancake mix designed to resemble crack cocaine. The bag contained four individually wrapped baggies of a rock-like substance resembling crack cocaine. The officers immediately arrested defendant.

Officer Bailey performed a field test and determined the substance was not cocaine. Defendant, prior to the field test, again volunteered that the substance was not real cocaine. Following the test, defendant stated he intended to sell each rock for $5 to crack cocaine users because he had no job or income. He further admitted he was the person who made the substance contained in the baggies. Officer Bailey admitted that defendant had no other items in his possession such as a cell phone, a pager, currency, a customer list, or a weapon, which would commonly be possessed by a drug dealer.

Officer Bailey's partner corroborated Bailey's version of the events, including defendant's statement that the baggies contained fake cocaine and that defendant made the fake drugs to sell for $5 each. The parties stipulated that a lab analysis confirmed that the contents of the baggies contained no controlled substance. The undisputed evidence also established that the distance between where defendant was arrested and the public housing property was less than 1,000 feet.

Defendant, testifying in his own behalf, stated that he had purchased five baggies of a substance supposedly containing cocaine for a total of $25. When he smoked the contents of one of the baggies but was unable to get high, he concluded the substance was fake.

Defendant further testified that after he discovered the substance was fake, he observed the officers' car, which he thought was the vehicle of the drug dealer who sold him the fake substance. He then flagged down the vehicle so that he could "get what [he] paid for." He admitted he flagged down the officers' vehicle because he thought it was occupied by the person who sold him the five baggies.

Defendant denied telling the officers he was "clean." He told them the baggies probably contained nail glue and pancake mix but he was unsure if the substance was fake. He denied stating that the reason he was going to sell the bags to drug dealers was because he needed the money. According to defendant, at the time he purchased the baggies he did not intend to sell any of the baggies but planned on smoking their contents. Officer Bailey, in rebuttal, testified that defendant never stated he was looking for the dealer who sold him the baggies.

The jury found defendant guilty of possession of a look-alike substance with intent to deliver within 1,000 feet of public housing property. Both defendant's counsel and defendant, *pro se*, filed posttrial motions. Neither of the posttrial motions raised any of the issues presented in this appeal. The trial court denied both posttrial motions, and defendant appealed.

## DISCUSSION

■ Defendant's first contention is that section 407(b)(3) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/407(b)(3) (West 2000)), punishing possession with intent to deliver a look-alike substance more severely than the statute governing possession with intent to deliver actual controlled substances, violates due process under the Illinois Constitution. We begin by noting that we will consider this constitutional issue even though defendant did not raise it in a posttrial motion. See *People v. Cochran*, 323 Ill. App. 3d 669, 676 (2001), citing *People v. Wagner*, 89 Ill. 2d 308, 311-12 (1982) (conviction under void unconstitutional statute may be attacked at any time).

In *Cochran*, the defendant challenged the constitutionality of both sections 404(b) and 407(b)(3) of the Act based on a denial of due process. The defendant there noted that a prior version of section 404(b) included a preamble which declared the statute's underlying rationales, that is, preventing overdoses and dampening the potential for greater profits inherent in the sale of look-alike substances. The defendant further pointed out that the amended statutes under which he was convicted lacked that preamble. The defendant reasoned that the absence of the preamble exposed the statutes underlying his conviction to a previous ruling of the supreme court nullifying an

earlier version of section 404 which predated the addition of the preamble and its rationales. See *Wagner*, 89 Ill. 2d at 313.

■ In *Cochran*, we held that section 404(b) of the Act was constitutional because, even though its present version does not contain the preamble language pertaining to the statute's dual rationales of preventing overdoses and greater profits, we believed that the present version should be presumed to reflect those two rationales. *Cochran*, 323 Ill. App. 3d at 676. Thus, we held that those rationales, endorsed by our supreme court in *People v. Upton*, 114 Ill. 2d 362 (1986), "remain viable even though the legislature did not reenact the preamble when it amended section 404(b)." *Cochran*, 323 Ill. App. 3d at 676. We further rejected the defendant's argument as to section 407(b)(3) for similar reasons. *Cochran*, 323 Ill. App. 3d at 678. We decline defendant's invitation to reconsider our decision in *Cochran* and continue to hold that the potential for increased penalties for the offense of possession with intent to deliver look-alike substances does not violate due process under the Illinois Constitution.

Alternatively, defendant contends, relying on *Cochran*, that section 404(b) is unconstitutional as applied to him. In that regard, he argues that the evidence in this case fails to demonstrate that the substance he possessed would cause harm or that he would receive any substantial profits from the sale of the substance.

In *Cochran*, the defendant raised a similar argument as defendant here by contending his conviction should be reversed on due process grounds because neither of the two rationales recognized in *Upton* applied to his case. See *Cochran*, 323 Ill. App. 3d at 676. In that regard, the defendant in *Cochran* asserted that, because the look-alike substance was "rice or some kind of grain" and there was no evidence that "ingestion of rice or grain would be harmful," the overdose rationale did not apply to his case. *Cochran*, 323 Ill. App. 3d at 676. As to the greater profit rationale, the defendant argued that, because he was merely trying to sell a look-alike substance that he had purchased to "recoup his losses," the profit rationale did not apply to him because he had no opportunity to realize an inflated profit. *Cochran*, 323 Ill. App. 3d at 677.

This court rejected both contentions in *Cochran*. In doing so, we stated that the evidence did not establish the composition of the look-alike substance; therefore, the facts in the case did not support the defendant's contention that the overdose rationale did not apply to his case. *Cochran*, 323 Ill. App. 3d at 677. Similarly, this court rejected the defendant's profit rationale argument, holding that the "factual record simply [was] not sufficient to support defendant's claim." *Cochran*, 323 Ill. App. 3d at 677.

■ Defendant here reads *Cochran* as standing for the proposition that a defendant may challenge his conviction for possession with intent to deliver a look-alike substance on the basis that the identified rationales behind the offense do not apply under the particular facts of his case. The *Cochran* decision does not so hold. In *Cochran*, this court never had to reach the legitimacy of such an argument because the factual premise underlying it did not exist. Thus, the *Cochran* court merely rejected the defendant's contention on that narrow basis and did not address the propriety of such an argument as a matter of law.

■ In the present case, however, we reject defendant's contention as a matter of law. First, we are aware of no authority, including *Cochran*, that permits such a case-specific challenge. Second, the legislatively recognized rationales underlying the look-alike offense at issue here are present in all situations where someone has possessed a look-alike substance with the intent to deliver. We recognize that not every delivery of a look-alike substance will involve a sale. But even in those very rare situations where look-alike substances are transferred without compensation, the overdose rationale would still obtain. The overdose rationale is not concerned with the harmful nature of the look-alike substance but reflects that a look-alike substance may create the risk of someone overdosing on an actual illegal substance. *Upton*, 114 Ill. 2d at 375. That danger exists in every case where a look-alike substance is sold irrespective of whether the look-alike substance itself may be harmful.

As for the profit rationale, the concern is the possibility that dealers of look-alike substances are able to reap greater profits from such sales and that higher fines will be the only effective deterrent. *Upton*, 114 Ill. 2d at 375. Such a rationale potentially applies to all sales of look-alike substances regardless of the actual financial circumstances under which the look-alike substance was procured or delivered.

Moreover, the rationales are nothing more than legislative justifications for the increased financial penalties. They are not elements of the offense. As long as the State has proved the elements of the relevant offense beyond a reasonable doubt, the rationales are necessarily implicated. Once the rationales are found to be legitimate, as they were in *Upton*, any inquiry into their applicability is at an end.

■ Defendant next contends that the trial court abused its discretion in sentencing him to a prison term of 10 years and 10 months for possessing with the intent to deliver a harmless substance worth only $20. Defendant never challenged his sentence in the trial court. His failure to do so constitutes a waiver for purposes of appeal. See *People v. Reed*, 177 Ill. 2d 389 (1997).

In an effort to avoid the waiver, defendant argues, citing no author-

ity, that, because the imposition of the street value and trauma center fines is an appealable issue, "it would be incongruous if the length of the prison term could not be advanced on appeal." This argument is without merit. There is no authority or reasoned argument to excuse the failure to challenge one part of a sentence because another part is appealable. Thus, we hold that defendant waived the sentencing issue he now seeks to raise.

Even if we were to consider the merits of defendant's contention regarding the length of his prison term, we would affirm his sentence in that regard. The determination of an appropriate sentence lies within the discretion of the trial court, and we will not disturb that determination absent an abuse of discretion. *People v. Bilski*, 333 Ill. App. 3d 808, 819 (2002). A trial court has wide latitude in sentencing a defendant, so long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation. *Bilski*, 333 Ill. App. 3d at 819. The weight attributed to such factors depends on the circumstances of a given case. *Bilski*, 333 Ill. App. 3d at 819. A trial court is in the best position to take into account such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age, whereas we have to rely entirely on the record. *Bilski*, 333 Ill. App. 3d at 819. Accordingly, a court of review must not substitute its judgment for that of the trial court merely because it would have weighed aggravating and mitigating factors differently. *Bilski*, 333 Ill. App. 3d at 819. Further, when mitigating evidence is before the trial court, the court is presumed to have considered it. *Bilski*, 333 Ill. App. 3d at 819. A defendant must point to something beyond the sentence itself to establish that such evidence was not considered. *Bilski*, 333 Ill. App. 3d at 819.

In the present case, defendant does not contend, nor is there any indication in the record, that the trial court either ignored relevant mitigating evidence or improperly considered aggravating evidence in sentencing him. Also, the sentence of 10 years and 10 months is not only within the Class X sentencing range applicable to him (see 730 ILCS 5/5—5—3(e)(1)(B) (West 2000)), it is relatively near the low end of that range. Furthermore, less than five years earlier defendant received a 10-year sentence for a previous Class 2 felony conviction. There is simply no indication that the trial court abused its discretion in sentencing defendant to 10 years and 10 months.

Defendant's reliance on *People v. Stacey*, 193 Ill. 2d 203 (2000), is not persuasive. In *Stacey*, the supreme court held that the trial court abused its discretion in sentencing the defendant to two consecutive 25-year prison terms based on his having committed the Class 2 felony of aggravated criminal sexual abuse when he momentarily touched the

breasts of two young girls. *Stacey*, 193 Ill. 2d at 210. Although the defendant was eligible for a Class X sentence based, in part, on his having been convicted of two prior burglaries, the supreme court held that "[g]iven the nature of the crimes, the 25-year sentences imposed are excessive and an abuse of discretion on the part of the trial court." *Stacey*, 193 Ill. 2d at 210.

This case is readily distinguishable from *Stacey*. The criminal act here, possession with the intent to deliver a look-alike substance within 1,000 feet of public housing property, is far more serious in relation to the sentence imposed than the nature of how the offense was committed in relation to the sentence imposed in *Stacey*. As the court noted in *Stacey*, the defendant's conduct there, while "reprehensible," was not proportionate to the sentence imposed. *Stacey*, 193 Ill. 2d at 211. Here, there is no disproportionate relationship between the nature of the offense and the sentence.

Defendant's final contention, which he also failed to raise in the trial court, is that the trial court lacked statutory authority to impose a street value fine and a trauma center fine because section 5—9—1.1 of the Unified Code of Corrections (730 ILCS 5/5—9—1.1 (West 2000)) expressly refers to cannabis and controlled substances and does not mention look-alike substances.

■ Notwithstanding a defendant's failure to raise the issue in the trial court, a sentence not authorized by statute is void and may be attacked at any time. *People v. Harris*, 319 Ill. App. 3d 534, 536 (2001). Because a void sentencing order may be attacked at any time, defendant has not waived this issue for appeal. See *People v. Jenkins*, 251 Ill. App. 3d 1, 7 (1993).

■ Turning to the merits, we begin with the plain language of section 5—9—1.1. That section provides, in relevant part:

> "When a person has been adjudged guilty of a drug related offense involving possession or delivery of *cannabis* or possession or delivery of a *controlled substance as defined* in the Cannabis Control Act, as amended, or the Illinois Controlled Substances Act, as amended, in addition to any other penalty imposed, a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized." (Emphasis added.) 730 ILCS 5/5—9—1.1(a) (West 2000).

There is no mention in section 5—9—1.1 of look-alike substances. That alone persuades us that the provision does not authorize imposition of a street value fine for look-alike substances.

Additionally, section 5—9—1.1(a) refers to the definition of controlled substances in the Act. Section 102(f) of the Act defines a controlled substance as any "drug, substance, or immediate precur-

sor" listed in the schedules of the Act. 720 ILCS 570/102(f) (West 2000). Further, the definition of a look-alike substance in section 102(y) is "a substance, other than a controlled substance." 720 ILCS 570/102(y) (West 2000). Look-alike substances clearly do not meet the definition of a controlled substance for purposes of imposing a street value fine under section 5—9—1.1. This bolsters our conclusion that a street value fine is not authorized by section 5—9—1.1. Therefore, we reverse the trial court's imposition of a $20 street value fine based on the look-alike substance.

We also hold that section 5—9—1.1 does not authorize imposition of a trauma center fine when the substance seized is a look-alike substance. Section 5—9—1.1(b) states, in relevant part, that "[i]n addition to any penalty imposed under subsection (a) of this Section, a fine of $100 shall be levied by the court *** for deposit into the Trauma Center Fund." 730 ILCS 5/5—9—1.1(b) (West 2000). Because it refers to section (a), which we have held does not apply to look-alike substances, section (b) likewise only applies to controlled substances or cannabis and not to look-alike substances. Consequently, we reverse the trial court's imposition of the $100 trauma center fine.

## CONCLUSION

For the foregoing reasons, we affirm defendant's conviction and sentence of 10 years and 10 months in prison but reverse that part of his sentence imposing the $20 street value fine and the $100 trauma center fine.

Affirmed in part and reversed in part.

McLAREN and GROMETER, JJ., concur.