**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210511-U

Order filed April 14, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, McDonough County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0511 Circuit No. 20-CF-152 |
| | ) | |
| KAVION K. POPLOUS, | ) ) | Honorable William E. Poncin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Brennan and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*: The court did not abuse its discretion by sentencing defendant to 18 years' imprisonment.

¶ 2        Defendant, Kavion K. Poplous, appeals from the McDonough County circuit court's denial of his motion to reconsider sentence. Defendant argues his 18-year prison sentence is excessive because the court failed to consider his youth, lack of criminal history, strong family and community ties, and substantial rehabilitative potential. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4          The State charged defendant with two counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1), (a)(2) (West 2020)), aggravated battery (*id.* § 12-3.05(e)(1)), and aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)). The State subsequently amended the charging instrument to charge defendant with a single count of attempted first degree murder (*id.* § 8-4(a), 9-1(a)(1)). The charge alleged that on September 15, 2020, defendant "without legal justification and with the intent to commit the offense of First Degree Murder ***, performed a substantial step towards the commission of that offense in that he discharged a deadly weapon striking Amarion Hargrove in the body several times with the intent to kill *** Hargrove."

¶ 5          Defendant retained counsel and entered an open plea agreement to attempted first degree murder. The State's factual basis for the plea established the following. On September 15, 2020, officers responded to a fire alarm at Thompson Hall, a dormitory at Western Illinois University. The officers found Hargrove, defendant's roommate, lying on the floor of room 1201. Hargrove had gunshot injuries to his abdomen. He was transported from the scene with life-threatening injuries. Before the shooting, defendant and Hargrove were involved in an incident which prompted defendant to produce a firearm from his backpack. Defendant shot Hargrove five times. The first shot struck Hargrove in the leg. Hargrove fell to the ground and defendant fired four additional shots into Hargrove's abdomen. Defendant left the scene before the police arrived. The police recovered a firearm in an area near the dormitory where defendant was seen walking. Laboratory testing forensically linked the firearm to the shooting and defendant.

¶ 6          The court accepted the parties' plea agreement and set the case for sentencing. The presentence investigation report (PSI) indicated that defendant was born on December 19, 2001. Defendant was raised by his mother, Tamara Topps, in Chicago. Defendant had suffered from

2

depression since the age of 12 after he witnessed the murder of an 18-year-old neighbor. Additionally, the PSI revealed defendant did not have any prior criminal convictions or juvenile adjudications.

¶ 7     At the sentencing hearing, the State presented, in aggravation, testimony from witness Joshua Smith and Detective Matthew Haslam. Smith testified he was the resident assistant on the 12th floor of Thompson Hall. Before the shooting, he was speaking with Hargrove in the hallway regarding Hargrove switching rooms. Defendant approached Smith and Hargrove, yelled at Hargrove for speaking with Smith and shoved Hargrove. Smith broke up the altercation. Defendant reached into his backpack, produced a firearm, and shot Hargrove. After the shooting, defendant slapped Hargrove on the head and said, "now what or what are you going to do now[.]" Smith sought counseling after the incident and noted the shooting had a negative impact on the residents of Thompson Hall.

¶ 8     Haslam testified that during the investigation, he found a 35-round magazine in a lock box under defendant's bed. While incarcerated after the shooting, defendant sent text messages referencing a "minor setback" and a "comeback." Haslam learned from speaking with Hargrove and from Hargrove's medical records that Hargrove had been shot three times in the lower abdomen, once in the top of his right leg, and once in the wrist. Hargrove did not return to school until the spring of 2021.

¶ 9     The State read Hargrove's victim impact statement. In that statement, Hargrove said he was traumatized by the incident and his dreams of playing college basketball had been taken away. Hargrove had struggled in social situations before the shooting, and the struggle became worse after the shooting because individuals were saying on social media that Hargrove had bullied defendant into shooting him.

¶ 10       Defense counsel called several witnesses in mitigation. Defendant's aunts, Curtisha Lawrence and Corinthia Diggins testified that defendant was intelligent, caring, and funny, and that they did not know defendant to be violent. The aunts explained that defendant's use of the phrase "minor setback for a major comeback" was a cultural saying meaning that obstacles can be overcome.

¶ 11       Defendant's 14-year-old brother, Durrell Hampton, and 10-year-old sister, Deya Hampton, testified they missed their older brother and defendant supported them growing up.

¶ 12       Defendant's mother, Topps, testified her son was exposed to numerous instances of gun violence as a child. In particular, he witnessed his best friend get robbed and shot. As a result, defendant suffered from anxiety and had a "shaking problem." Topps said he was entrepreneurial, a hard worker who would help at home, an avid reader and did well in school. Defendant was excited to attend Western Illinois University because it was far away from the trauma he had experienced as a child in Chicago. Before the shooting, defendant told Topps he wanted to move rooms because he was having issues with his roommate, Hargrove. Defendant told Topps some of his belongings were missing, but he did not report the issue because he tried to be the "peacemaker."

¶ 13       Defendant testified he did not know Hargrove before attending Western Illinois University. During the month he and Hargrove lived together, defendant found Hargrove to be confrontational. Before the shooting, Hargrove met defendant in the laundry room with the woman defendant had been seeing. Defendant returned to their room, and Hargrove brought the woman to the room and tried to cause trouble. Later in the day, defendant and the woman rode a bus to Walmart. The woman became upset with defendant when he received a call from another woman. The woman exited the bus and notified campus safety about her verbal exchange with defendant. Campus

safety spoke with defendant about his argument with the woman. Afterward, defendant spoke with Smith who directed defendant to the community director, who offered to move defendant to another room for the night. Defendant declined the offer, and thereafter, had a verbal altercation with Hargrove. When defendant heard Hargrove speaking with Smith in the hallway, he approached them to provide his version of events. According to defendant, Hargrove charged him. Smith pulled Hargrove away from defendant. When Smith released Hargrove, Hargrove charged defendant a second time and threw a lock at him. Defendant said the first gunshot missed Hargrove because defendant was shaking. Defendant did not recall seeing where the subsequent gunshots struck Hargrove. Defendant said shooting Hargrove was unnecessary and he regretted his actions. Defendant said he obtained the firearm used in the shooting earlier that same day. Defendant said he was traumatized by his childhood in Chicago and that made him feel threatened by Hargrove. Due to this trauma, defendant suffered from nervous breakdowns and "a shaking problem." Defendant said that he wanted to return to the university to study English literature.

¶ 14      Defense counsel introduced eight letters of support which the court admitted into evidence.

¶ 15      The State argued in aggravation that the offense caused serious harm, threatened serious harm to others, and that a greater sentence was necessary to deter others. Additionally, the State noted the offense took place on a college campus, a 35-round magazine was found in defendant's dormitory room, and defendant lacked remorse.

¶ 16      Defense counsel argued that defendant acted under strong provocation; substantial grounds justified his conduct, though they failed to amount to a defense; he will compensate Hargrove for the injuries Hargrove sustained; he had no prior criminal history; his conduct was unlikely to recur; and his character and attitude indicated he was unlikely to commit another crime. Additionally, defense counsel argued:

"Basing a lot off *Miller*, a Supreme Court case. In *People vs. Miller* and its progeny. At this time we are learning a lot more about the development of the brain at 17 and 18. [Defendant] was very young when this occurred. He's still young. He will be admittedly older upon release. I think this is a very specific set of circumstances of a young kid in his first year of college being bullied by his roommate.

\* \* \*

I think based on his reaction, his remorse, I think it would be safe to say that, again, [defendant] is not a career criminal that we worry about going back out and committing crimes. He had never done anything like this before. [He] never committed any crime before. This is not history. This is not a pattern. This was a young man acting on fear and impulse. And reacting, admittedly quite poorly, to those stressors.

[Defendant] will certainly need counseling for a number of issues. This one being one of many that may probably require him to go through counseling. But he does have a strong support system at home as we've seen.

His family did come down here to speak on his behalf. They were willing to come down and advocate for him. They were willing to help him after he is released from his sentence of incarceration. I think having that support system will also aid in his ability to make sure that nothing like this ever happens again. \*\*\*

\* \* \*

\*\*\* He had 18 other years of life to look back on, which also should really sink in for a minute. He's only had 18 years of life. The things you think and do and the way you react at 18 are just significantly different than as you grow up.

6

And that, again, is the full force of the *Miller* decision and its progeny with the life sentences for juveniles. They're not done developing. We treat them as adults but in no way are they adults. ***

* * *

[Defendant] is a kid who made a mistake. That little boy made a mistake, and he's going to have to pay for it, and that's the unfortunate truth."

¶ 17    In defendant's statement in allocution, he apologized to Hargrove. Defendant admitted he made a mistake and asked for forgiveness. He stated his main goal was to use this experience to help guide others. He planned to go back to school, and possibly become "a risk youth counselor."

¶ 18    The court stated it considered all the evidence and information submitted during the hearing, the arguments of counsel, and the evidence presented prior to the hearing. The court noted "it must consider such factors as the Defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age." In aggravation, the court found the sentence was necessary to deter others. In mitigation, the court found defendant had no prior criminal history. The court reasoned:

"The circumstances under which this crime occurred, which appear to be at its bases [*sic*], a routine squabble between roommates, escalated way out of hand through the result of only one party and that was the Defendant in this case.

The character and the attitudes of the Defendant indicate he is unlikely to commit another crime. The Court can't make that determination in part by what the Defendant testified to here today. It appeared a portion of his testimony was denial, and the other portion was victim blaming.

7

The Defendant indicated during his testimony that if *** Hargrove had not done what he did none of this would happen. When asked specifics about the actual time of the shooting, the answers were often I'm not sure. I didn't know what I was doing. That does not comport with the particular mitigating factor. And since this is [a] nonprobationable sentence, as Counsel pointed out, that's not applicable. I don't find any other mitigating factors.

Other factors that will influence the Court's sentence. I've already mentioned that the Defendant has been experience [*sic*] to violent incidents or has been an eyewitness to those during a young age and does perhaps carry some trauma as a result of what he has observed. He indicates that he has a problem with shaking. His mother bored that out in her testimony. But, also, the Defendant saw firsthand the horrors of gun violence. And on this particular day, he resorted to that very conduct.

The Defendant has a loving and caring and supportive family, and that is certainly a factor in his favor and speaks to his ability at some point to be restored to useful citizenship. But at the same time what he has done has hurt his family, not as much as other people. But it was obvious to the Court that they've experienced a great deal of pain, not about what anybody else has done in this case but what their son has done in this case or their brother or their nephew.

In looking at other factors of an aggravating nature, the Court would note that this incident took place in Thompson Residence Hall on the Western Illinois University campus. A residence hall is a home for the people who live on that floor.

And this crime, in essence, happened in the home of a number of people who were residents of that floor and present at the time of this incident.

The notion of provocation that has been suggested appears to be further undercut by the fact that the Defendant testified here today that he got the gun that very day. The Court was trying to fit that into some sort of a timeline with the other information that was presented. The incident in the laundry room. The incident at the bus stop. The contact with the R.A.s and the head R.A. or the assistant head R.A. And when in that series of events the Defendant would have obtained a gun. It would appear to the Court that it would have been prior to any of that happening that day. Also, the presence of a high capacity clip for that gun is just not explained to the Court.

When the Defendant professed to have no knowledge or was not persuasive as how that would have come to be in a lock box in his room. The fact that this incident occurred with an eyewitness who was in a position to be at risk during the discharge of a firearm in this case. The gun was possessed on a university campus. And, furthermore, it was illegally possessed by the Defendant. He did not have a FOID card.

The Court finds no provocation of any sort that would rise to a level to in any way explain or certainly excuse what had happened. It's been referred to as an attack. But I accept the testimony of [the eyewitness] that the Defendant was, at most, shoved by Mr. Hargrove prior to this incident. The fact that the firearm was discharged multiple times, that the victim was struck five times, that the Defendant slapped him afterwards, and made a comment, as the State indicated, to the

9

substance of what are you going to do now? The Defendant acknowledging that at the time he acted—while he says he doesn't know what he was doing, he also testified that he was not at risk."

The court sentenced defendant to 18 years' imprisonment.

¶ 19 Defendant filed a motion to reconsider sentence wherein he argued his sentence was excessive because he was only 18 years old at the time of the offense. The court denied the motion. Defendant appeals.

¶ 20 II. ANALYSIS

¶ 21 Defendant argues that the circuit court abused its discretion in sentencing him to an excessive 18 years' imprisonment given his youth, lack of criminal background, strong family and community ties, and substantial rehabilitative potential.

¶ 22 "It is well settled that a trial judge's sentencing decisions are entitled to great deference and will not be altered on appeal absent an abuse of discretion." *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007). A reviewing court "must not substitute its judgment for that of the trial court simply because the reviewing court would have weighed the factors differently." *Id.* at 800-01. A sentence that falls within the statutorily prescribed range is presumptively valid (*People v. Busse*, 2016 IL App (1st) 142941, ¶ 27), and "is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." *People v. Franks*, 292 Ill. App. 3d 776, 779 (1997).

¶ 23 The statutory sentencing range for attempted first degree murder is 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25 (West 2020). Since defendant's sentence is within the applicable range, it is presumptively valid. See *Busse*, 2016 IL App (1st) 142941, ¶ 27.

¶ 24 " 'A trial court has wide latitude in sentencing a defendant, so long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation.' " *People v. Flores*, 404

10

Ill. App. 3d 155, 157 (2010) (quoting *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003)). "The existence of mitigating factors does not obligate the trial court to impose the minimum sentence" (*People v. Garibay*, 366 Ill. App. 3d 1103, 1109 (2006)), and does not preclude it from imposing the maximum sentence (*People v. Pippen*, 324 Ill. App. 3d 649, 652 (2001)). The absence of aggravating factors does not require the circuit court to impose the minimum sentence. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). We presume the court considered the relevant factors and mitigation evidence presented. *People v. Wilson*, 2016 App (1st) 141063, ¶ 11. The court is not required to "recite and assign a value to each factor." *Id.* It is defendant's burden to show that the court did not consider the relevant factors. *Id.*

¶ 25 We first consider defendant's argument that the court did not give sufficient weight to his age. Defendant's argument derives from the Supreme Court's holding in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), that the eighth amendment to the United States Constitution "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." This holding derived from the rationale that "[m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at 477. However, *Miller* has no application to the present case because defendant was not a juvenile and was not subject to a mandatory life sentence. In fact, under Illinois case law, defendant's sentence was less than half of the length required to be considered a *de facto* life sentence. See *People v. Buffer*, 2019 IL 122327, ¶ 41 ("a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eight amendment").

¶ 26 The record also rebuts this argument. The court, in its sentence pronouncement, stated it had considered the arguments of counsel, and defense counsel argued at length regarding

11

defendant's youth. The court expressly noted that it needed to consider defendant's age in formulating the sentence. Prior to these comments, the court received considerable evidence on defendant's age, level of education, and maturity.

¶ 27 The defendant also argues the court did not consider his strong family ties, lack of criminal history, and rehabilitative potential. Contrary to defendant's assertion, the court noted defendant's lack of a criminal history as a factor in mitigation. Regarding defendant's family ties and rehabilitative potential, the court explicitly mentioned these factors during its ruling. Additionally, these factors were mentioned at length during defense counsel's argument, which the court considered.

¶ 28 Because the court considered all the mitigating factors raised by defendant in his appeal, we conclude that defendant's excessive sentence argument is essentially an assertion that the court did not give sufficient weight to the mitigating evidence. However, we will not substitute our judgment for that of the circuit court simply because we might have weighed the factors differently. *Jackson*, 375 Ill. App. 3d at 800-01. Accordingly, we conclude the court did not abuse its discretion when it sentenced defendant to 18 years' imprisonment.

¶ 29 III. CONCLUSION

¶ 30 The judgment of the circuit court of McDonough County is affirmed.

¶ 31 Affirmed.