NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240276-U

NO. 4-24-0276

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 5, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| KAITLYN SCOTT, | ) | No. 23CF42 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court vacated and remanded for resentencing, ordering the trial
court to properly consider defendant's level of impairment as a factor in
sentencing her for aggravated driving under the influence.

¶ 2     Defendant, Kaitlyn Scott, pled guilty to aggravated driving under the influence

(DUI) (625 ILCS 5/11-501(d)(1)(F) (West 2022)) and was sentenced to 11 years' imprisonment.

On appeal, defendant argues the trial court abused its discretion when imposing an 11-year

sentence by failing to consider (1) her good character, (2) her substance abuse and mental health

issues were connected to her experiences as a combat veteran, and (3) she was not impaired by

methamphetamine at the time of the offense. For the reasons stated below, we vacate defendant's

sentence and remand the cause for resentencing.

¶ 3                                      I. BACKGROUND

¶ 4	On February 6, 2023, defendant was charged by information with aggravated DUI (625 ILCS 5/11-501(d)(1)(F) (West 2022)). The State alleged defendant was driving a motor vehicle and had "any amount of methamphetamine in her breath, blood, or urine in violation of 625 ILCS 5/11-501(a)(6) [(West 2022)]," she was involved in a vehicle accident causing the death of Ralph Brown, and her violation was the proximate cause of Brown's death. A formal indictment followed on March 2, 2023.

¶ 5	On July 11, 2023, defendant entered an open plea of guilty to the charge. Defendant was admonished of her rights, the charges, the possible penalties, and the rights she would be giving up by pleading guilty. See Ill. S. Ct. R. 402(a) (eff. July 1, 2012).

¶ 6	At the plea hearing, the State proffered the following factual basis for the charge. On December 30, 2022, defendant was driving a large truck near El Paso when she veered into the oncoming lane and crashed into the vehicle driven by Brown. There was a fire. The fire department and emergency responders arrived, and Brown was pronounced dead at the scene. The autopsy report would show Brown died from multiple blunt injuries due to the collision. Defendant was taken to the hospital and was read the traffic crash warning to motorists by Officer Charles Barth of the Illinois State Police. Defendant submitted a urine sample, which tested positive for methamphetamine. The trial court accepted defendant's guilty plea as knowing and voluntary and supported by an adequate factual basis. The court ordered a presentence investigation report (PSI) and scheduled the case for sentencing.

¶ 7	The PSI showed defendant was 35 years old and a veteran of the United States Air Force, having enlisted in 2006 as an aircraft mechanic and been honorably discharged in 2017. Defendant reported receiving numerous awards and recognitions during her enlistment and serving in three tours of duty in Afghanistan. Defendant stated she suffered from a traumatic

brain injury and had been under the care of doctors at the Veterans Administration (VA) for post-traumatic stress disorder (PTSD) and addiction since December 2022. Defendant reported her overall mental health and emotional condition as " 'stable' " but also reported a history of long-term depression. Defendant had been diagnosed with PTSD, severe depression, and anxiety. She explained she had been "battling extreme mental health issues due to PTSD" and had tried to "deal with those issues in [her] own way though addiction."

¶ 8 Defendant had a history of alcohol and drug use, including heroin and methamphetamine. Defendant stated she began drinking alcohol when she was 18 years old and first used heroin when she was 30. Defendant used half a gram of heroin every day. However, she stopped using alcohol and heroin in October 2019. Defendant reported she participated in both inpatient and outpatient substance abuse treatments between 2018 and 2019 and successfully completed the programs. Defendant first consumed methamphetamine when she was 34 years old, using less than half a gram a couple times per week, and her last date of consumption was January 3, 2023. Defendant reported that she believes she has been a drug addict for five years. When asked if she was under the influence of drugs at the time of the offense, she reported she was not under the influence of alcohol at that time, but she had used drugs two days before the accident. Since then, defendant reportedly completed inpatient substance abuse treatment (in April) and was currently attending outpatient treatment with the VA.

¶ 9 Defendant held three jobs between 2017 and 2020. Although the PSI indicated defendant was unemployed at the time of the offense, this was later corrected to note she has held her current job, working part-time in property maintenance, for three years.

¶ 10        Defendant's criminal history includes several traffic-related offenses. The PSI indicated defendant has been on court supervision four times, three of which were revoked and the convictions entered. Defendant has been placed in "Veterans Treatment Court" twice. She successfully completed one program, and the case was dismissed. She was currently on "Veterans Treatment Court Probation" in Woodford County for a charge of possession of methamphetamine, which occurred in August 2022.

¶ 11        Included with the PSI was a personal statement wherein defendant explained she accepted responsibility for her actions, acknowledged she violated the law by using an illegal drug and having it in her system while driving, and acknowledged that Brown died and his family is suffering as a result of her actions. Defendant wrote about her struggles with mental illness, PTSD, and addiction. She acknowledged she had not been "taking responsibility for these issues and that has lead [*sic*] to the consequences of [her] actions today." She explained since the accident she has completed an inpatient treatment program, continued to participate in outpatient substance abuse and mental health treatment, and become more religious because of her time in jail. Defendant stated she was "completely ashamed" of her actions, never wanted to harm anyone, and "by continuing in my recovery I can be sure that my actions will never cause harm or danger to anyone again." She also asked for an opportunity to apologize to Brown's family, her family, the judge, and on the record in court.

¶ 12        At the sentencing hearing, the State presented a photograph of Brown and a letter from Carol White, describing him as an exemplary father, grandfather, friend, and member of the community. His widow, Lana Brown, read a victim impact statement describing the pain and suffering his death has caused her and their family and friends. They had been married for 41 years. He was a veteran of the United States Navy. She described his strong work ethic, pride in

his craftsmanship as a carpenter and woodworker, devotion to his family, giving and loving personality, and passion for nature and outdoor activities.

¶ 13　　　　In mitigation, defendant presented letters confirming she was in an inpatient substance abuse treatment program with the VA from February 1, 2023, to March 20, 2023, and had been regularly attending outpatient sessions. Defendant also presented nine letters from her family, friends, and employer, describing her as a kind and dependable person who is very remorseful for her actions and dedicated to continuing her recovery from mental health and substance abuse issues. The letters described defendant as a person willing to lend a hand to friends and strangers and expressed admiration for her sacrifice to serve in the military and the toll it took on her. Defendant also made a statement in allocution. Defendant apologized to Brown's family for their suffering and loss. She said it "weighs very heavy on [her] heart" and she prays for them to "find forgiveness in your hearts not for [her] sake but for your own" so they may find peace. Defendant also apologized to her family for the pain she caused them, explaining she was embarrassed and ashamed to be in this position but was grateful for their support. She apologized to the State and the trial court because she was raised to obey the law. She acknowledged she had "a problem and that I will have to take care of that problem for the rest of my life" and she had been doing her best since the accident.

¶ 14　　　　The State argued defendant has a history of drug use and she had methamphetamine in her system at the time of the accident where she ended the life of an "extraordinary person." Defendant admitted to using the drug again three days after this accident. She was also currently on probation in Veterans Treatment Court for possession of methamphetamine. Although defendant should be given credit for pleading guilty and for seeking treatment for her problem since the accident, the State noted that "we can't lose sight" of

the fact that "Mr. Brown is not here" and defendant "killed another person." The State recommended a sentence of 12 years, the required mandatory supervised release thereafter, and a $5000 fine.

¶ 15        Defense counsel acknowledged the State did not have to prove impairment but noted defendant had a "low amount of methamphetamine" in her system at the time. Defendant did not contemplate her use of methamphetamine two days earlier would have resulted in this accident. Counsel argued officers at the scene did not suspect any impairment and defendant attempted to assist the first responders. Defendant acknowledged her struggles with mental health issues and drug abuse. Defendant was remorseful and had since participated in treatment to deal with those issues. Defense counsel asked for the minimum sentence, with credit for time served.

¶ 16        The sentencing range for this offense was 3 to 14 years in prison. See 625 ILCS 5/11-501(d)(2)(G) (West 2022). Defendant was sentenced to 11 years' imprisonment. In making this determination, the trial court noted it considered the factual basis given at the plea hearing, the PSI and its attachments, the financial impact statement from the Illinois Department of Corrections, the evidence offered in aggravation and mitigation, defendant's statement in allocution, and the arguments as to sentencing alternatives. The court considered the factors in mitigation and aggravation, noting:

> "[The] Court turns to the statutory factors in mitigation and aggravation that may apply in this case. In mitigation the court finds that the defendant did not contemplate that her conduct would cause or threaten serious physical harm to another. In aggravation the court finds that the defendant has a prior criminal

history. Court finds that a sentence is necessary to deter others from committing the same crime. Court further finds that this offense was committed against a person who is over the age of 60. And court further finds that the defendant was serving a term of probation for a felony when this offense was committed."

¶ 17 The trial court stated it did not believe defendant had "malice in her heart when she got behind the wheel that day," and "it is obvious the emotional impact that this offense has not only brought upon Mr. Brown's family and Ms.—but also upon the defendant and her family." The court acknowledged defendant was remorseful and has taken responsibility for her actions, but it could not "ignore the nature and circumstances of this offense." The court found it "especially aggravating" that, when this offense occurred, defendant was on a term of probation with the Veterans Treatment Court for possession of methamphetamine, the same drug she had in her system when she committed this offense.

¶ 18 Defendant was sentenced to 11 years' imprisonment, to be served at 85%, followed by 2 years of mandatory supervised release. She was ordered to pay a $1000 fine, $5000 in restitution, and costs.

¶ 19 Defendant filed a motion to reconsider her sentence, which was denied.

¶ 20 This appeal followed.

¶ 21                                II. ANALYSIS

¶ 22 The sole issue on appeal is whether the trial court abused its discretion in sentencing defendant to 11 years' imprisonment for aggravated DUI. Defendant argues the court abused its discretion by failing to consider (1) her good character, (2) her substance abuse and

mental health issues were connected to her experiences as a combat veteran, and (3) she was "not impaired" by methamphetamine at the time of the offense.

¶ 23        Trial courts have broad discretionary powers in imposing sentences, and we give such decisions great deference on review. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Although a reviewing court has the power to reduce a sentence imposed by the trial court (Ill. S. Ct. R. 615(b)(4) (eff. Jan 1. 1967)), this power should be exercised "cautiously and sparingly." *People v. O'Neal*, 125 Ill. 2d 291, 300 (1988). It is well established that "[a] trial court has wide latitude in sentencing a defendant, so long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation." *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003). The trial court is in the best position to observe "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A reviewing court will not reweigh factors considered and may not alter a sentence imposed by the trial court absent an abuse of discretion. *People v. Pippen*, 324 Ill. App. 3d 649, 652 (2001). An abuse of discretion occurs if the trial court imposes a sentence that "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 24        We first address defendant's argument that the trial court failed to consider her character when determining her sentence. The record reveals the court considered the PSI, which included a written statement from defendant, her statement in allocution, and nine letters written in support of her character. The court addressed defendant directly, stating: "[I]t is apparent to me in listening to you today during your statement in allocution and also from the letters that I have read that you are remorseful for this offense." The court noted "defendant did not contemplate that her conduct would cause or threaten serious physical harm to another" and "she

- 8 -

did not have malice in her heart when she got behind the wheel that day." We conclude the trial court did, in fact, consider her character in imposing its sentence.

¶ 25　　Although defendant acknowledges the trial court considered her substance abuse addiction and mental health struggles in determining her sentence, she argues the connection of these issues to her service in the armed forces should have resulted in a lesser sentence. We cannot agree. Drug addiction is not an explicit factor in mitigation or aggravation. See 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2022). However, courts have found "a history of substance abuse is a 'double-edged sword' that the trial court may view as a mitigating or aggravating factor." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 105 (quoting *People v. Mertz*, 218 Ill. 2d 1, 83 (2005)). Our supreme court has held similarly regarding information about a defendant's mental health issues. See *People v. Coleman*, 183 Ill. 2d 366, 406 (1998) (reaffirming previous decisions finding information about a defendant's mental impairment could be viewed as mitigating or aggravating depending upon the circumstances). The record shows the court adequately considered these factors in imposing its sentence, and it is not our duty to reweigh the factors involved in the sentencing decision.

¶ 26　　Defendant further contends the trial court should have considered it a mitigating factor that she was "not impaired," despite having methamphetamine in her system, at the time of the accident which resulted in Brown's death. On this matter, we find error.

¶ 27　　Defendant pleaded guilty to aggravated DUI (methamphetamine) resulting in a death, which is a "strict liability" offense. *People v. Martin*, 2011 IL 109102, ¶ 26. As such, proof of impairment was not required. Rather, all the State had to prove was defendant had any amount of methamphetamine in her system. See 625 ILCS 5/11-501(a)(6), (d)(1)(F) (West 2022); *Martin*, 2011 IL 109102, ¶ 26 ("A driver with controlled substances in his body violates

section 11-501(a)(6) simply by driving."). Our supreme court has explained the flat prohibition against driving with any amount of a controlled substance in one's system was to keep drug-impaired drivers off the road while recognizing, unlike with alcohol, it is not possible to determine scientifically the amount of a drug that renders a driver impaired. *Martin*, 2011 IL 109102, ¶ 22 (citing *People v. Fate*, 159 Ill. 2d 267, 271 (1994)).

¶ 28         While the question of level of impairment is irrelevant to the question of guilt in these cases, it can be relevant at sentencing. "The particular nature and circumstances surrounding an offense are relevant factors to be considered in sentencing." *People v. Solano*, 221 Ill. App. 3d 272, 274 (1991). Like with other factors, evidence of level of impairment in these cases could be a "double-edged sword" that the trial court may view as mitigating *or* aggravating. *Mertz*, 218 Ill. 2d at 83. It is not difficult to ascribe a greater degree of culpability on the part of a defendant who gets behind the wheel of a vehicle showing signs of impairment by a controlled substance versus a driver who is found to have some level of a controlled substance in her system at the time but shows no signs of being impaired. When presented with relevant information regarding level of impairment, it would be within the sentencing court's discretion to sentence the former defendant more harshly than the latter.

¶ 29         Here, defense counsel made several claims at sentencing suggesting that, although defendant had methamphetamine in her system at the time of the accident, she was not, in fact, impaired. Specifically, counsel argued the officer at the scene did not suspect any type of impairment; defendant rendered assistance after the accident; blood and urine testing taken at the hospital soon after the accident showed an "extremely low" level of methamphetamine in defendant's system; defendant claimed she last took the drug two days before the accident; and defendant's account of the accident was that she took her eyes off the road while trying to eat. If

true, these assertions would suggest that defendant was not impaired at the time of the accident and there was another explanation for her attention being diverted and crossing into the oncoming lane of traffic. The problem, however, is that these statements from defendant's counsel were not reflected in evidence tendered to the court. It is unclear whether the State, which was not required to prove impairment, agreed with these representations, nor is it clear whether the trial court accepted them or even considered them.

¶ 30        In light of this uncertainty, we are concerned about the following statement from the trial court suggesting its view that Brown's death was causally related to defendant's drug use:

> "And when I take into consideration your prior criminal history, especially looking at the fact that there have been multiple attempts over the years by you and others to address your addiction issues and your mental health issues that have to this point not been successful, *and ultimately your path down that road has led to Mr. Brown's death*." (Emphasis added.)

It is true defendant was guilty of aggravated DUI resulting in a death simply by driving with any level of methamphetamine in her system. The conviction "requires a causal link only between the physical act of driving and another person's death." *Martin*, 2011 IL 109102, ¶ 26. However, one thing clearly absent from both the evidentiary record and the argument of counsel is any suggestion that defendant's drug use caused the accident that day and, correspondingly, Brown's death. Therefore, if the trial court considered it an aggravating factor that defendant's use of methamphetamine caused the accident and Brown's death, such a factual predicate would not be supported by the evidence below; in this circumstance, the proper result is to vacate defendant's

sentence and remand for resentencing. See *People v. Gill*, 2023 IL App (1st) 201109-U, ¶ 81 (petition for leave to appeal pending, No. 130260 (filed Dec. 1, 2023)) ("When a sentencing judge relies on aggravating factors unsupported by evidence in the record, we must vacate the defendant's sentence and remand for resentencing."); *People v. Zapata*, 347 Ill. App. 3d 956, 963 (2004) (holding that it was improper for the trial judge to rely on concerns about gang violence when there was no evidence that the crime was gang-related). Based on the record before this court, we conclude the trial court abused its discretion in sentencing defendant and remand the case for a new sentencing hearing. Remand will allow the trial court to properly consider level of impairment as a factor in sentencing; make clear its factual findings about what role, if any, impairment played in causing the accident; and ensure a proper record to support such findings.

¶ 31                              III. CONCLUSION

¶ 32          For the reasons stated, we vacate defendant's sentence and remand for resentencing.

¶ 33          Vacated and remanded.