**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220231-U

Order filed August 29, 2023

---

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0231 Circuit No. 20-DV-269 |
| | ) | |
| MONIKA MORO, | ) ) | Honorable George A. Ford, |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices McDade and Peterson concurred in the judgment.

---

**ORDER**

¶ 1     *Held*: (1) The circuit court failed to comply with Rule 431(b) and the evidence was closely balanced. (2) The evidence was sufficient to find the defendant guilty.

¶ 2     The defendant, Monika Moro, appeals her conviction for criminal damage to property arguing, *inter alia*, (1) the Du Page County circuit court failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), and (2) she was not proven guilty beyond a reasonable doubt.

¶ 3                             I. BACKGROUND

¶ 4        On December 13, 2021, the defendant was charged by superseding information with domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2020)), battery (*id.* § 12-3(a)(1), (2)), criminal damage to property (*id.* § 21-1(a)(1)) and interfering with the reporting of domestic violence (*id.* § 12-3.5(a)). The case proceeded to a jury trial on April 26, 2022.

¶ 5        The circuit court empaneled potential jurors in groups of six and began by asking each juror whether they understood and accepted the principles of law described in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). The court asked the first panel of jurors whether they understood and accepted that the defendant is presumed innocent. Each juror responded by answering, "Yes," except for one juror, whose answer was not audibly transcribed. The court then inquired whether each juror on that panel would "accept that the defendant is not required to offer any evidence in [*sic*] her own behalf?" The court did not, however, inquire first whether each juror understood that the defendant is not required to offer evidence on her own behalf.

¶ 6        At trial, Ludek Vacek testified that he was in a relationship and living with Sharka Magnus. He had formerly been in a relationship with the defendant. On March 4, 2020, Vacek was in his backyard painting when the defendant arrived uninvited. She approached him angrily and began yelling at him. Vacek held a paintbrush in front of himself to prevent the defendant from hitting him. Nonetheless, the defendant hit Vacek on his shoulder and he felt "terrible" pain.

¶ 7        At that time, Vacek observed that Magnus had opened the back door and the defendant started swearing at Magnus and calling her names. The defendant then grabbed the paintbrush out of Vacek's hands and threw it at Magnus. The brush did not hit Magnus but did make a hole in the siding of the house. The defendant then walked toward Magnus and began hitting her on the shoulder and arms, causing Magnus's phone to fall from her hands. Vacek stepped between them. After the incident, Magnus's hands were red, swollen and "sprained."

¶ 8    On cross-examination, Vacek confirmed that the defendant had simply approached and started hitting him without preamble. He clarified that the defendant tried to hit him several times, hitting him on the head and shoulder. When Vacek was asked about telling an officer that the defendant only struck him once, he maintained that he was in shock when originally speaking to the officer.

¶ 9    Magnus testified that she heard yelling and screaming and saw the defendant walking in the backyard toward Vacek. In response, Magnus moved toward the back door and began taking photographs and video recordings with her cell phone, but then called 911. She exited the house while she was on the phone with the dispatcher. Magnus stayed close to the house and did not approach Vacek or the defendant. Magnus told the defendant that she was calling 911, at which point the defendant started running toward Magnus with a paintbrush and threw the brush at her. Magnus bent down and the brush hit the house, making a hole in the siding.

¶ 10    Magnus observed the defendant strike Vacek multiple times. After throwing the brush at Magnus, the defendant ran at Magnus and started punching and hitting Magnus. Magnus tried to move away toward the driveway. At that point, the defendant struck Magnus's hand multiple times, which was holding her phone. On the last strike from the defendant, the phone fell from Magnus's hand. The strikes were "very painful," and Magnus's hand hurt for a week after the attack. After Magnus's phone hit the ground, it was broken on both sides and was no longer working. The back of the phone was completely shattered, the phone had locked, and Magnus was "unable to open it." There were lines covering the phone's screen.

¶ 11    Magnus further testified that the defendant entered her car, and Magnus used her phone to take photographs of the defendant's car. The defendant insulted Magnus's mother, and Magnus spit at the defendant's car. The defendant then drove away.

¶ 12        On cross-examination, Magnus was questioned about telling officers shortly after the incident that she did not know how her phone had fallen out of her hand. When asked why the only photograph taken of her hands did not appear to depict any redness or swelling, Magnus insisted that the swelling occurred several hours later. She then provided the State with two additional photographs of her hands, which the State introduced into evidence. One photograph appeared similar in coloration to the photograph taken by police, while the other photograph had significantly different coloring and appeared to depict additional injuries to Magnus's hands. When asked about the differences, Magnus testified that the photographs had been taken only seconds apart, and, when asked whether she had used a filter to take the photographs, she stated she "just use[d] [her] phone."

¶ 13        Detective Kevin Riggle testified that the defendant arrived voluntarily to the Glen Ellyn Police Department on March 4, 2020, and provided an audio and video recorded statement. The video was played for the jury. In her statement, the defendant explained that she had been driving by Vacek's residence, saw his vehicle, and went to speak to him regarding money she was owed. The defendant confronted Vacek in his backyard. At the time the defendant approached, Vacek was painting, and had a brush in his hand. Vacek told the defendant that she needed to leave, but she continued to confront him. The defendant grabbed the brush from Vacek's hand, waved it around, and then threw it "over the house."

¶ 14        The defendant stated that Magnus then exited the back door and told the defendant to leave or she would call the police. Magnus was holding her phone in her hand. As the defendant began to walk toward her car, Magnus followed her, and the defendant believed she was either being recorded or the police were being contacted. The defendant used her right hand to "swat[ ]" either

4

the phone or Magnus's hand away and told her to get it out of her face. The defendant stated that the phone was in Magnus's hand the entire time and it never hit the ground.

¶ 15    The parties then stipulated to the testimony of Officer Horan. Horan was called to Vacek's home on March 4, 2020, and spoke to Magnus. Magnus told Horan that she saw the defendant strike Vacek on his right shoulder with a closed fist and his back with her hands. Magnus told Horan that the defendant then grabbed a paintbrush and threw it at the house in Magnus's direction. Magnus stated that she was holding her phone in her right hand and informed the defendant that she was calling 911. The defendant struck Magnus's right hand causing the phone to fall to the concrete and the screen to break.

¶ 16    Vacek told Horan that the defendant struck his right shoulder with a closed fist and his back several times with her hands. Vacek stated that the defendant attempted to punch him approximately 10 times but missed. The defendant then grabbed the paintbrush out of Vacek's hands and threw it at the house. Horan observed Magnus's phone had cracked on the front and back.

¶ 17    Following deliberations, the jury found the defendant guilty of criminal damage to property but not guilty of all other charges. The defendant filed a motion for a new trial. The motion was denied, and the defendant was sentenced to one year of court supervision. The defendant appealed.

¶ 18    II. ANALYSIS

¶ 19    On appeal, the defendant argues, *inter alia*,[1] that (1) the court failed to comply with Rule 431(b) where it failed to ask if the jurors understood the principles, and (2) she was not proven guilty beyond a reasonable doubt. We consider each of these arguments in turn. The defendant

_____

[1]While the defendant also raises an ineffective assistance of counsel claim and other Rule 431(b) violations, we need not consider them based on our resolution of these issues.

5

admits that the Rule 431(b) violation was not properly preserved for appeal, but requests that we consider the issue under the plain error doctrine.

¶ 20     The plain error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances. *People v. Averett*, 237 Ill. 2d 1, 18 (2010). We will apply the plain error doctrine when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

The first step in a plain error analysis is to determine whether error occurred. *People v. Wilmington*, 2013 IL 112938, ¶ 31.

¶ 21     Our supreme court has held that Rule 431(b) "mandates a specific question and response process. The trial court must ask each potential juror whether he or she understands and accepts each of the principles in the rule." *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). The State concedes that the court erred by failing to ask whether the jurors understood that the defendant was not required to present evidence on her own behalf. We accept the State's concession as the court failed to inquire whether several jurors understood the principle, and thereby committed a clear violation of Rule 431(b), which is "error in and of itself." *Wilmington*, 2013 IL 112938, ¶ 32.

¶ 22     Because we have found that the court violated Rule 431(b), we are compelled to assess whether the case was closely balanced. *People v. Sebby*, 2017 IL 119445, ¶ 69 ("The only question in a first-prong case, once clear error has been established, is whether the evidence is closely

6

balanced."). To determine whether evidence adduced at trial was closely balanced, a reviewing court must evaluate "the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Id.* ¶ 53. This requires assessment of the evidence on the elements of the charged offense, along with any evidence regarding the witnesses' credibility. *Id.*

¶ 23      Here, evidence of the defendant's guilt was derived primarily from the testimony of Vacek and Magnus. There were no independent eyewitnesses and no extrinsic evidence other than the damaged phone itself, which provided no inherent evidence about *how* it was damaged or whether the defendant intended to damage it. Police did not arrive to investigate until after the defendant had left Vacek and Magnus's home. The defendant provided a statement to police denying she committed any crime. Thus, the evidence in this case hinged on the credibility of the alleged victims.

¶ 24      The testimony of Vacek and Magnus contained inconsistencies when describing the defendant's actions. Vacek initially testified that the defendant struck his shoulder and then elaborated on cross-examination that she had struck his head as well. Vacek was subsequently confronted with his statement to police that he had been struck only once, and, later, the parties stipulated that he had informed another officer that he had been struck several times in the back after dodging multiple punches from the defendant. Magnus's statements regarding the operability of her phone were at times contradictory. She initially testified that her phone was not working, the back of the phone was completely shattered, and the screen was locked and had covering the phone's screen. Magnus stated that she was "unable to open it." She then described how she continued to use the phone to take photographs and videos of the defendant and, later, introduced photographs she claimed were taken with her phone that day.

7

¶ 25 It is unclear which portions of Vacek and Magnus's testimony the jury relied upon in reaching its verdict, but the fact that the jury acquitted the defendant of five of the six charged offenses suggests that the jury was unconvinced by significant portions of their testimony. Under these circumstances, we find the evidence was closely balanced as the case turned on a credibility test. See *id.* ¶ 63 (" 'Given these opposing versions of events, and the fact that no extrinsic evidence was presented to corroborate or contradict either version, the trial court's finding of guilty necessarily involved the court's assessment of the credibility of the two officers against that of defendant.' " (quoting *People v. Naylor*, 229 Ill. 2d 584, 607 (2008))).

¶ 26 While we find that the court committed a reversible Rule 431(b) error, we must still determine, for double jeopardy purposes, whether the evidence was sufficient to convict. See *Piatkowski*, 225 Ill. 2d at 566 (whether the evidence is closely balanced is a separate question from a sufficiency of the evidence claim). In a challenge to the sufficiency of the evidence, our determination is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We draw all reasonable inferences from the evidence in favor of the prosecution and we will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or credibility of the witnesses. *People v. Martin*, 2011 IL 109102, ¶ 15. Unlike our review of the closeness of the evidence, when determining whether the evidence is sufficient to convict, we are not permitted to consider the credibility or reliability of witness testimony. *Piatkowski*, 225 Ill. 2d at 567. To prove the defendant guilty of criminal damage to property, the State was required to prove the defendant knowingly damaged Magnus's phone. See 720 ILCS 5/21-1(a)(1) (West 2020).

¶ 27    Here, the undisputed evidence presented to the jury established that the defendant sought out Vacek and entered his property uninvited. Magnus exited the house with her phone in her hand. The defendant, according to her own statement, "swatted" at and made physical contact with Magnus's hand. According to Vacek and Magnus, the defendant was angry, violent, and aggressive when she arrived at their home. Magnus testified that her phone was broken as a result of the defendant striking her hand and submitted photographic evidence that it was damaged.

¶ 28    Magnus's statements regarding how her phone was damaged, if believed, would establish the defendant's guilt beyond a reasonable doubt. The defendant's intent in damaging the phone may be inferred from the circumstances and the context of her interactions with Magnus. See *People v. Taylor*, 2022 IL App (4th) 210507, ¶ 26 (the defendant's intent to cough on an officer was inferred from the context of the defendant's interactions with the officer). Viewing the evidence in the light most favorable to the State and deferring to the jury's credibility findings as we must, the evidence was sufficient to find the defendant guilty of criminal damage to property. Thus, double jeopardy does not bar the defendant's retrial. See *Piatkowski*, 225 Ill. 2d at 567; *People v. Cox*, 2023 IL App (1st) 170761, ¶ 64 (holding that the evidence produced at trial was sufficient for a finding of guilt but remanding for retrial due to error). We, therefore, vacate the defendant's conviction for criminal damage to property and remand for a new trial.

¶ 29                            III. CONCLUSION

¶ 30    The judgment of the circuit court of Du Page County is vacated and remanded.

¶ 31    Vacated and remanded.